OPINION OF THE COURT
Simons, J.
This action was instituted by Kemper Reinsurance Company (Kemper Re) against the State Superintendent of Insur *257 anee, as liquidator of the insolvent, Midland Insurance Company. Kemper Re seeks a declaration that Insurance Law § 7427 authorizes it to offset moneys it concededly owes Midland under a reinsurance contract against amounts Midland owes it for premiums under a separate and distinct contract. Defendant Superintendent’s principal contention is that the obligations under the reinsurance contract and Midland’s unrelated debts to Kemper Re are not "mutual,” and thus the latter may not be used to offset the former. We disagree and therefore affirm the order of the Appellate Division.
I
In 1979, Midland and its affiliates entered into a reinsurance treaty whereby Kemper Re agreed to reinsure certain lines of business ceded through the treaty in return for premiums. In 1984, in an unrelated transaction, Midland issued an excess products liability insurance policy to Esmark, Inc./International Playtex, Inc. and negotiated a facultative contract with Kemper Re reinsuring 75% of the risk. The Playtex contract contained an insolvency clause obligating Kemper Re to pay reinsurance proceeds due under the contract notwithstanding Midland’s subsequent insolvency.
In April of 1986, Midland was placed into liquidation. At that time Kemper Re owed Midland approximately three quarters of a million dollars in reinsurance proceeds for underwriting losses under the Playtex contract, while Midland owed Kemper Re unpaid premiums allegedly exceeding that amount under the treaty. When Kemper Re attempted to set off the amount Midland owed it under the treaty against the amount Kemper Re owed Midland under the Playtex contract defendant objected. Kemper Re brought this action claiming it was entitled to the offset, and defendant, as liquidator, counterclaimed for the amount Kemper owed Midland under the Playtex contract.
Both parties moved for summary judgment. Supreme Court denied Kemper Re’s motion and granted defendant’s cross motion. The Appellate Division unanimously modified the order by granting Kemper Re’s motion for summary judgment, holding it had the right to set off premiums due from Midland against the reinsurance proceeds owed, and denied defendant’s cross motion.
Defendant contends that the debts may not be offset because they arise out of different transactions, offset is barred by the *258 language of the insolvency clause in the Playtex contract, and because they are not owed to and from the same person.
II
A reinsurance contract is one by which a reinsurer agrees to indemnify a primary insurer for losses it pays to its policyholders. Such contracts are of two general types. Treaty reinsurance is obtained in advance of actual coverage and may cover any risk the primary insurer covers. The contract is formed when the primary insurer "cedes” part of the premiums for its policies and the losses on those policies to the reinsurer. A facultative reinsurance contract is one obtained to cover a particular risk. The reinsurer does not assume liability for losses paid in either case; its only obligation is to indemnify the primary insurer. Typically, reinsurance permits a small insurer to minimize its exposure to catastrophic loss by the distribution of its risks to another insurer or group of insurers. It also permits a primary insurer to reduce the amount of the legally required reserves held for the protection of policyholders, and to increase the company’s ability to underwrite other polices or make other investments (see generally, Semple and Hall, The Reinsurer’s Liability in the Event of the Insolvency of a Ceding Property and Casualty Insurer, 21 Torts & Ins LJ 407 [1986]; Schwab, Anderson, Reed and Mendelsohn, Onset of an Offset Revolution: The Application of Set-Offs In Insurance Insolvencies, 8 J of Ins Reg 464 [1990], also reported in 95 Dick L Rev 449; Keeton and Widiss, Insurance Law § 1.3 [b] [2] [1988]).
Although reinsurance contracts are indemnity contracts, they commonly contain insolvency clauses which, even in the absence of a primary insurer’s payment to policyholders, permit a liquidator to collect from the reinsurer the amount of reinsurance proceeds that would have become due if the ceding company had not become insolvent. The New York statutes encourage such clauses by providing that unless the reinsurance contract contains an insolvency clause the primary insurer may not consider the reinsurance as an asset or claim a deduction for the amount ceded (see, Insurance Law § 1308 [a] [2]). The loss of those rights is substantial because if the primary insurer must maintain reserves in the full amount of reinsurance ceded, one of the primary reasons for obtaining reinsurance is defeated.
Our statutes also permit insurers and reinsurers to net *259 their respective preliquidation debts. Thus, the Insurance Law provides that "[i]n all cases of mutual debts or mutual credits between the insurer and another person in connection with any action or proceeding [in rehabilitation or liquidation], such credits and debts shall be set off and the balance only shall be allowed or paid” (Insurance Law § 7427 [a]). It is plaintiffs right of offset under the statute that is in dispute in this appeal.
A
Defendant first contends that "mutual” debts or credits must arise out of the same contractual transaction and that because the debts and credits in this case did not the statute does not authorize them to be offset against one another. To hold otherwise, he asserts, would result in an unlawful preference of the reinsurer over the policyholders and, ultimately, those answerable for the policyholders’ losses.
Under our decisions, debts and credits are mutual when they are "due to and from the same person in the same capacity” (Beecher v Vogt Mfg. Co., 227 NY 468, 473; Matter of People [Consolidated Indem. & Ins. Co.], 287 NY 34, 38). The language of the statute does not state, however, whether they must arise from the same transaction. What little legislative history there is suggests that they need not. Before the statute was enacted in 1932, Superintendent Van Schaick, in an explanatory memorandum to the Legislature, stated that section 420 (the predecessor to section 7427) was patterned after the conventional provisions commonly found in insolvency laws and the provisions of the Bankruptcy Act (see, Mem of Superintendent Van Schaick dated Mar. 15, 1932, Bill Jacket, L 1932, ch 191, at 9).[1] Under the bankruptcy laws offsets arising out of different transactions have consistently been *260 permitted; they are distinguished from recoupment which involves claims arising from the same transaction (see, 4 Collier, Bankruptcy If 553.03 [15th ed], and authorities cited therein; Schwab, Anderson, Reed and Mendelsohn, Onset of an Offset Revolution: The Application of Set-Offs In Insurance Insolvencies, 8 J of Ins Reg 464, 470-473, also reported in 95 Dick L Rev 449; see generally, 5 Carmody-Wait 2d, NY Prac § 31.2).
It is significant that New York decisions of the time, much like the bankruptcy courts, recognized the distinction between offset and recoupment and held generally that debts arising from different transactions could be set off (see, e.g., Matter of National Cash Register Co. v Joseph, 299 NY 200, 203; Otto v Lincoln Sav. Bank, 268 App Div 400, affd 294 NY 798; Merry Realty Co. v Shamokin & Hollis Real Estate Co., 186 App Div 538, revd on other grounds 230 NY 316). Thus, it appears that the Legislature, in extending the remedy of offset to liquidation proceedings, did not intend it to be limited to mutual debts arising from the same transaction.[2]
Notwithstanding this background, defendant maintains that the "same transaction” rule is compelled in liquidation cases by earlier New York cases (citing Matter of People [Consolidated Indem. & Ins. Co.], 287 NY 34, supra; Pink v American Sur. Co., 283 NY 290; Pink v Title Guar. & Trust Co., 274 NY 167; New York Tit. & Mtge. Co. v Irving Trust Co. 241 App Div *261 246, affd 268 NY 547). We do not read those decisions to support his position.
In New York Tit. & Mtge. Co. v Irving Trust Co. (supra), we approved an offset involving debts from separate and distinct transactions. There, the Superintendent of Insurance, as receiver of a domestic insurer in rehabilitation, had sued a bank for moneys due and owing on certain demand deposit accounts maintained and issued by the bank. The bank sought to defend by setting off amounts owed by the insurer to the bank based on the insurer’s guarantee of the payment of principal and interest on unrelated bank mortgages. We held that the offset — which clearly arose out of a separate transaction — was allowable under section 420 of the Insurance Law (now § 7427) (see, New York Tit. & Mtge. Co. v Irving Trust Co., 268 NY 547, supra). Defendant would distinguish New York Tit. & Mtge. Co. because the party asserting the offset was not a reinsurer and because that case involved a rehabilitation proceeding and not liquidation. The decision involves the concept of mutuality, however, which is the touchstone of offset under section 7427 of the Insurance Law. Moreover, the statute applies to both rehabilitation and liquidation and requirements remain the same in either case (see, Insurance Law § 7427; New York Tit. & Mtge. Co. v Irving Trust Co., 241 App Div 246, 248, supra).
Defendant also relies on Pink v Title Guar. & Trust Co. (supra). In Pink, the Superintendent of Insurance brought an action to disaffirm the fraudulent transfer of mortgages by defendant. We struck defendant’s pleaded offset because we found fraud in the procurement of the offsetting debt, not because the debts arose out of different transactions. We distinguished New York Tit. & Mtge. Co. v Irving Trust Co. because it involved debts which arose "on contract,” as opposed to those arising out of a trust relationship (see, Pink v Title Guar. & Trust Co., 274 NY 167, 172-173, supra) and in doing so, we reaffirmed our previous position that debts arising in contract, but not necessarily out of the same transaction, may be set off against one another (see, Pink v Title Guar. & Trust Co., supra, at 172).
The other cases cited are similarly distinguishable. In Matter of People (Consolidated Indent. & Ins. Co.) (287 NY 34, supra), the moneys owed to the insolvent reinsurer’s estate by defendant insurer were the result of salvage — i.e., proceeds received and held in trust by the insurer for the purpose of *262 reimbursing the insurer and reinsurer proportionately for their losses. Defendant sought to set off this debt against one owed to it by the insolvent reinsurer under several reinsurance agreements. We held that there was no mutuality and disallowed the offset under the statute because the two claims were held in different capacities: salvage recoveries were held by defendant as a trustee, whereas the insolvent’s obligation to defendant was a debt created by a contractual obligation. Pink v American Sur. Co. (283 NY 290, supra) is similarly distinguishable. Thus, the legal authority in New York appears to support the position of plaintiff, not defendant.
Furthermore, we do not agree with defendant that public policy considerations justify adopting a "same transaction” rule. Although permitting offsets may conflict with the statutory purpose of providing for the pro rata distribution of the insolvent’s estate to creditors, the Legislature has resolved the competing concerns and recognized offsets as a species of lawful preference. Indeed, if an offset is otherwise valid, there would seem to be no reason why its allowance should be considered a preference: it is "only the balance, if any, after the set-off is deducted which can justly be held to form part of the assets of the insolvent” (Scott v Armstrong, 146 US 499, 510).
Nor does it appear that a multiple transaction rule will encourage insurance company insolvency. An important reason offset has been recognized as desirable is that it provides a form of security to insurers. As explained by the United States Court of Appeals in Stamp v Insurance Co. (908 F2d 1375, 1380):
"Offsetting debts in a reinsurance pool not only spreads risk but also acts as mutual security for performance. Such security is especially important for smaller insurers; if the large firms could not count on the netting of balances to satisfy obligations, they would be more likely to exclude smaller or tottering firms — making new entry harder and precipitating failures of firms in difficulty.”
We conclude, therefore, that the contractual obligations between Kemper Re and Midland constitute "mutual debts” for purposes of offset under section 7427 of the Insurance Law despite the fact that they arise out of two separate and distinct transactions.
*263 B
Next, defendant contends the insolvency clause in the Playtex contract barred setoff by its terms.
To support his argument that no debtor/creditor relationship existed, defendant contends first that the insolvency clause — included in the Playtex contract pursuant to Insurance Law § 1308 (a) (2) (A) and requiring Kemper Re to pay Midland or the liquidator "without diminution because of such insolvency” — creates an obligation that is absolute and precludes the reinsurer from exercising its right of offset.[3] He interprets "without diminution” as meaning that moneys due to the insolvent insurer must be paid to the liquidator without any subtraction, regardless of the reinsurer’s right to set off the treaty premiums against the Playtex losses prior to insolvency. Defendant has misconstrued the purpose of the insolvency clause.
Insurance Law § 1308 (a) (2) (A) was enacted in response to the Supreme Court’s decision in Fidelity & Deposit Co. v Pink (302 US 224). That case held, based on the language of the reinsurance contract and consistent with the indemnity nature of reinsurance contracts in general, that a reinsurer need only reimburse the liquidator of the insolvent ceding company for losses actually paid by the ceding company or the liquidator to the insureds on the underlying policies (see, Fidelity & Deposit Co. v Pink, supra). Section 1308 was intended to overcome that decision by altering the indemnity nature of a reinsurance contract when the ceding company becomes insolvent (see, Mem of Superintendent Pink dated Feb. 26, 1940, Bill Jacket, L 1940, ch 87). Pursuant to the statute, if the contract contains a statutory insolvency clause, the reinsurer is obligated to pay the liquidator his or her allocated share of any losses due under the reinsurance contract even though the insolvent ceding company has not first made payment to the insureds on the underlying policies. Nothing in the language of section 1308 (a) (2) (A) or its *264 history, however, support the conclusion that the statute was enacted to destroy a reinsurer’s right of offset under Insurance Law § 7427. Indeed, were we to adopt defendant’s construction of the insolvency clause the reinsurer’s right of offset granted by section 7427, would be nullified in every liquidation proceeding where a ceding company elected to include the clause in its reinsurance contract pursuant to section 1308 (a) (2) (A).[4]
C
Nor is mutuality of capacity or identity lacking.
Before an offset will be allowed, the claims must be mutual, i.e., owed between the same persons and in the same right. If the debts between the parties arise when those parties were acting in different capacities, the debts will not be considered mutual. "Capacity” means legal capacity (e.g., principal, agent, trustee, beneficiary). Contracting principals, who are debtors and creditors of each other by virtue of entry into a contract or contracts, have the same legal capacity and may set off debts against each other.
By seizing on the contractual reference in the insolvency clause — that payment is to be made without diminution "directly to the Company or its liquidator” — defendant contends that a special category of obligation was created which is owed not to the insolvent insurer but directly to the liquidator. In effect, he contends there has been a novation of the contract because of insolvency and that after the liquidation order the reinsurer holds the reinsurance proceeds in trust for the liquidator, thus destroying any debtor/creditor relationship previously existing between Kemper Re and Midland. However, the language of the contract directing payment to the liquidator merely tracks the language of Insurance Law § 7405 (a) which allows the Superintendent of Insurance to take possession of the insolvent insurer’s assets and deal with them in his own or the insured’s name. It was not intended to create a special category of obligation owed directly to the liquidator.[5] Moreover, liquidation cannot place the liquidator *265 in a better position than the insolvent company he takes over, authorizing him to demand that which the company would not have been entitled to prior to liquidation (see, Bohlinger v Zanger, 306 NY 228, 234; see also, 2A Couch, Insurance 2d §§ 22:48, 22:50 [rev ed]). Defendant concedes that before Midland was adjudged insolvent Kemper Re had the right to set off the treaty premiums against the amount owed under the Playtex contract. Those rights were not altered merely because a liquidation order was entered. To hold that they were would be to render portions of the statute meaningless by prohibiting offset of all preliquidation debts between an insolvent insurer and reinsurer arising out of a reinsurance contract, despite the fact that section 7427 of the Insurance Law applies to liquidation proceedings.
Finally, defendants contend that the debts were not between the same parties because Midland’s affiliates had the right to cede risks to Kemper Re under the treaty. Notwithstanding the affiliates’ right to cede business to Kemper Re under the treaty, Midland was the only company that did so. Midland alone, therefore, contracted the debt for unpaid premiums, and notwithstanding his conclusory assertions, defendant has failed to make a record establishing that the affiliates were jointly liable for those premiums. Thus the requisite mutuality of identity exists between Kemper Re and defendant, as liquidator of Midland.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. Superintendent Van Schaick acknowledged that the statute left unanswered the question of whether premiums could be set off. He believed such offsets should be allowed, given the Legislature’s tendency to extend the principle of offset, but stated that the matter would probably have to be decided by the courts (see, Mem of Superintendent Van Schaick dated Mar. 15, 1932, Bill Jacket, L 1932, ch 191, at 9). Some jurisdictions expressly prohibit setting off premiums (see, e.g., Conn Gen Stat Annot § 38a-932; Haw Rev Stat §431:15-319 [b] [4]; Idaho Code § 41-3330 [2] [d]; Ind Code § 27-9-3-28 [b] [4]; Iowa Code Annot § 507C.30 [2] [d]; Ky Rev Stat Annot § 304.33-330 [2] [d]; Minn Stat Annot § 60B.34 [2] [d]; Mont Code Annot § 33-2-1359 [2] [d]; NH Rev Stat Annot § 402-C:34 [II] [d]; NM Stat Annot § 59A-41-45 [B] [4]; Pa Stat Annot, tit 40, § 221.32; SC Code Annot § 38-27-490 [b] [4]; Utah Code Annot § 31A-27-323 [2] [d]; Wis Stat Annot § 645.56 [2] [d]). Defendant does *260 not contend in this case, however, that such a prohibition exists under section 7427 of the Insurance Law.

. The general rule, recognized by courts and commentators alike, holds that mutual debts and credits between parties may be set off even though they arise from different transactions. And this is so, even in cases involving insolvent insurance companies (Scammon v Kimball, 92 US 362, 367; Stamp v Insurance Co., 908 F2d 1375; Barnett Bank v State ex rel. Department of Ins., 507 So 2d 142 [Fla App]; Prudential Reinsurance Co. v Superior Ct., 6 Cal App 4th 275 [2d Dist], review granted — Cal 3d —, 789 P2d 342 [1990]; see generally, Schwab, Anderson, Reed and Mendelsohn, Onset of an Offset Revolution: The Application of Set-Offs in Insurance Insolvencies, 8 J of Ins Reg 464, 468-469 [1990]; Semple and Hall, The Reinsurer’s Liability in the Event of the Insolvency of a Ceding Property and Casualty Insurer, 21 Tort & Ins U 407; Semple and Hall, Offsets in Liquidations: A Matter of Balance, 87 Best’s Rev 56 [1986]; 4 Collier, Bankruptcy ff 553.03 [15th ed]; but see, Jemigan, The Case for Restricting Offsets, 91 Best’s Rev 55 [1990]). Indeed, as early as 1875 the Supreme Court held in Scammon (supra) that "mutual debts” could arise out of "independent” transactions when it permitted bank deposits of the insolvent insurer to be offset against insurance proceeds owed to a bank for a fire loss.

. The clause provided in pertinent part:
"In the event of the insolvency of [Midland], reinsurance under this Agreement shall be payable by [Kemper] on the basis of the liability of ¡Midland] under the Reinsurance Agreement, without diminution because of such insolvency, directly to [Midland] or its liquidator, receiver or statutory successor, except as otherwise specified in the statutes of any state having jurisdiction of the insolvency proceedings.” (Emphasis added.)

. Defendant cites Bluewater Ins. v Balzano (823 P2d 1365 [Colo Sup Ct]), in support of his position that the "without diminution” language in the insolvency clause nullifies a reinsurer’s right to an offset. That case dealt with a common-law right of offset. Indeed, the Colorado Supreme Court distinguished the case from this one because the New York Insurance Law specifically allows offsets in insurance liquidation proceedings.

. Defendant cites Corcoran v Ardra Ins. Co. (77 NY2d 225) for the *265 proposition that he has different rights than did the insolvent insurer, but that decision dealt with remedies available to the parties after a liquidation order had been entered. Nothing in it suggests that the liquidator’s appointment affects a creditor’s substantive right of offset.