**In re Michael Carmen CENTOLELLA, Marie Angela Centolella, Debtors.**

**Bankruptcy No. 91–03475.**

United States Bankruptcy Court, N.D. New York.

July 10, 1992.

Leon R. Koziol, Utica, N.Y., for debtors.

Giruzzi & Zamorski, Utica, N.Y., for Utica Community Federal Credit Union; Jerome F. Zamorski, of counsel.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of a motion filed on February 28, 1992 by Michael Centolella and Marie Centolella ("Debtors") against Utica Community Federal Credit Union ("Credit Union") for sanctions and punitive damages, including $350 in costs and attorney's fees, based upon an alleged violation of § 362(a) of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"), and for the release to Debtors of certain funds alleged to have been preferentially transferred to the Credit Union.[1] The motion was argued on March 10, 1992,

after which the parties were given the opportunity to submit memoranda of law. The matter was finally submitted for decision on April 2, 1992.

## JURISDICTION

The Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and (b)(2)(A,K,O).

## FACTS

On December 9, 1991, Debtors filed a voluntary petition for relief under Chapter 7 of the Code. At the time of filing, Debtors maintained a share draft account, or checking account ("account") with the Credit Union, the balance of which was approximately $1,257.73 as of November, 1991. Additionally, as of November, 1991, Debtors were in default under a loan agreement entered into on December 5, 1989, pursuant to which they owed the Credit Union approximately $3,155.77. On November 18, 1991, Debtors notified the Credit Union that they were contemplating filing for bankruptcy. Thereafter, on or about November 25, 1991, but at any rate pre-petition, the Credit Union apparently placed an administrative "freeze" on the Debtors' account and offset the monies in the account against the balance due on the loan.

On or about March 16, 1992, Debtors filed an amended Chapter 7 petition, claiming a cash exemption in $1,282.73 held in the account. Debtors have been unable to realize this claimed exemption, however, as the Credit Union refuses to release these funds.

## ARGUMENTS

Debtors' motion is captioned as a "Motion for Sanctions for Violation of Automatic Stay and Release of Bank Funds Claimed

---

**1.** The Court notes that the instant action is essentially a proceeding brought by the Debtors to recover money or property, which requires a determination as to the validity of a lien. As such, it should have been properly brought as an adversary proceeding pursuant to Federal Rules of Bankruptcy Procedure 7001(1) and (2). Nevertheless, "the Court chooses to resolve the

dispute, rather than delay its adjudication, and proceed to the merits herein, observing that neither (party) has raised this procedural defect." *In re Roberts Hardware Co.,* 103 B.R. 396, 398 n. 3 (Bankr.N.D.N.Y.1988). *See also In re Command Services Corp.* 102 B.R. 905, 908 (Bankr.N.D.N.Y.1989).

as a Preference." Debtors have devoted their ensuing argument, however, almost exclusively to the issue of the automatic stay, and have only briefly alluded to the preference issue.

Debtors maintain that the Credit Union had no security interest in Debtors' account. Though not clearly articulated in their moving papers or by oral argument, Debtors appear to argue that the Credit Union therefore had no authority to offset the funds in question, and that those funds therefore never left Debtors' possession, but rather became property of their bankruptcy estate. It thus appears to be Debtors' ultimate contention that the Credit Union's subsequent refusal to release the portion of such funds claimed by Debtors as exempt constituted a violation of the automatic stay.[2] As previously mentioned, Debtors lastly argue that the setoff of the funds is a voidable preference.

The Credit Union argues that the "Note, Security Agreement and Truth–in–Lending Disclosure" (loan agreement), executed by the parties in connection with the loan, gave it a security interest in the funds, or "shares" in Debtors' account, by which it had the authority to apply those funds against the outstanding balance on Debtors' loan obligation. The Credit Union thus disputes the apparent premise of Debtors' argument concerning a violation of the automatic stay. Also, the Credit Union offers no response to Debtors' vague allusion to the question of whether the setoff constituted a voidable preference.

## DISCUSSION

"A pre-petition setoff is valid as long as it complies with the state law governing a creditor's right to setoff and with the requirements of section 553 of the Bankruptcy Code." *In re Dillard Ford, Inc.*, 940 F.2d 1507, 1512 (11th Cir.1991) (citations omitted). *See also In re Remillong*, 131 B.R. 727, 728 (Bankr.D.Mont.1991) (citing 4 COLLIER ON BANKRUPTCY, ¶ 553.05, pp. 523–29 and 30 (15th ed.)). The Debtors do not argue that the setoff violated either the state law requirement of mutuality of

debts, *see, e.g. Matter of Midland Ins. Co.*, 79 N.Y.2d 253, 259, 582 N.Y.S.2d 58, 61, 590 N.E.2d 1186, 1189 (1992), or Code § 553, but rather argue that the setoff was invalid for failure to satisfy the security interest prerequisite allegedly imposed by the loan agreement. Thus, both parties have devoted most of their attention to the issue of whether the Credit Union possessed a security interest in Debtors' account and whether the loan agreement allowed for the setoff of the funds in question.

Debtors argue that because the Credit Union failed to mark any of the appropriate boxes under the heading "Security" on page one of the loan application, which would have alerted them to the existence of a security interest, they executed the loan agreement in the legitimate belief that no such interest in their funds was being created.

The Credit Union, however, asserts that Debtors should have been alerted to the fact that a security interest in their shares was being created by virtue of other provisions of the agreement. In this regard, the Credit Union points out an additional heading at the bottom of page one of the application, which reads "Security In addition to your pledge of shares, you are giving the Credit Union a security interest in the following property . . ." (emphasis in original document). Additionally, the Credit Union argues that following provisions on page two of the application clearly indicate the existence of a security interest in Debtors' account and right of set-off:

> **Credit Union Shares** If there is a default, the Credit Union will have an interest, up to the amount of your loan obligation(s), in your shares under the Credit Union's By–Laws and the Federal Credit Union Act [12 U.S.C. § 1757(11)]
>
> .    .    .    .    .
>
> **What Happens if You are in Default** If you are in default, the Credit Union has the right to demand immediate payment,

---

**2.** Although Debtors do not cite Code § 362(a)(3) as a basis for relief, that section prohibits a creditor from "exercis[ing] control over property of the estate."

in full, of all amounts you owe it and to take possession of the Property.

. . . . .

The Credit Union may exercise any rights it has under Federal and State law to set off your shares and deposits if you are in default.

■ While it appears that the Debtors ignorance of the existence of any security interest in their account funds is genuine, the Court cannot ignore the fact that the loan agreement contains several conspicuous references to the claim of such a security interest by the Credit Union. From Debtors' standpoint, the loan agreement is, at best, ambiguous in this regard, but it is not so lacking in references to security in their account as to justify their surprise at the Credit Union's claim. Thus, the Court must conclude that, taken as a whole, the loan agreement evidences a security interest of the Credit Union in Debtors' account funds, and that the Credit Union therefore properly setoff the funds in question, which therefore never entered Debtors' bankruptcy estate. *See* 11 U.S.C. § 541(a)(3).[3]

■ The Court now turns to Debtors' somewhat disguised contention that the setoff is recoverable as a preference. Though Debtors allude to the setoff being avoidable pursuant to Code § 547(b), questions of setoff under the Code are governed exclusively by Code § 553, and a setoff is thus not avoidable as a preference under Code § 547. *See In re Dillard Ford, Inc.*, 940 F.2d at 1512 (citing 11 U.S.C. § 553 (" 'Except as ... provided in this section ... this Title does not affect any right of a creditor to offset a mutual debt' ")); *In re Hankerson*, 133 B.R. 711, 714 (Bankr.E.D.Pa.1991) (citation omitted); *In re Remillong*, 131 B.R. at 728. Thus, if the setoff is to be avoided, it must be done in accordance with Code § 553. *See id.*

Though not raised by either party, Code § 553(b) provides for the avoidance by the *trustee* of a setoff as follows:

(b)(1) ... if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) in this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

In the instant case, it is not the Trustee, but the Debtors who seek to avoid the setoff. By its terms, Code § 553(b) does not allow a Chapter 7 debtor to avoid a setoff. However, the Court will entertain Debtors' motion as being made pursuant to Code § 522(h), which, in pertinent part, allows a debtor to avoid and recover an involuntary setoff of property which *could have* been avoided and recovered by the trustee pursuant to Code § 553. *See* 11 U.S.C. § 522(h).

■ In determining whether the Trustee could have avoided the setoff effected by the Credit Union pre-petition, and thus, whether the Debtors may avail themselves of Code § 522(h), the Court must first determine whether the Credit Union improved its position by virtue of the setoff, which would be measured by any favorable change to the Credit Union in the "insufficiency" referred to and defined in Code § 553(b) In *In re Hankerson*, Bankruptcy

---

**3.** Moreover, though not raised by either party, even if a written security agreement between the parties were found to be lacking in the instant case, it appears that the Credit Union would have a "banker's lien" against Debtors' account under New York common law. *See Paine–Erie, Etc. v. Lincoln First Bank, Etc.*, 82 Misc.2d 432, 435, 370 N.Y.S.2d 370, 374 (N.Y.Sup.Ct.1975); *Rio v. Army Aviation Center Federal Credit Union*, 82 B.R. 138, 143 (M.D.Ala. 1986) (citing *Kaufman v. First National Bank of Opp, Alabama*, 493 F.2d 1070, 1072 (5th Cir. 1974).

Judge Scholl interpreted the "turgid syntax" of Code § 553(b)(1) to mean "that the trustee may recover the amount set off to the extent that the insufficiency on the date of the setoff ('the setoff insufficiency') is less than the insufficiency on the later of 90 days before the filing and the first date of an insufficiency during the 90–day prepetition period ('the beginning insufficiency')," and that under Code § 553(b), "the trustee may only recover amounts where the 'setoff insufficiency' is exceeded by the 'beginning insufficiency.'" *Supra*, 133 B.R. at 715. *See also Matter of GEC Industries*, 128 B.R. 892, 900 (Bankr.D.Del. 1991) (citing *In re Ebbler Furniture and Appliances, Inc.*, 804 F.2d 87 (7th Cir. 1986).

As previously indicated, the Credit Union set off approximately $1,257.73 in Debtors' account against approximately $3,155.77 outstanding on the defaulted loan, leaving a "setoff insufficiency" of approximately $1,898.04. Under Code § 553(b), the Trustee could only have recovered the amount, if any, by which the "beginning insufficiency" exceeded the "setoff insufficiency" of $1,898.04. Unfortunately, the "beginning insufficiency" is unknown to the Court, as neither party has offered any evidence in that regard. The Court is thus unable to make a determination as to whether the Trustee could have avoided any portion of the setoff pursuant to Code § 553(b).

Therefore, based upon the foregoing, Debtors' motion for sanctions, costs and attorney's fees, and punitive damages pursuant to Code § 362(h), based upon an alleged violation of Code § 362(a) is, denied, and Debtors' motion to recover the funds offset by the Credit Union is also, denied.

IT IS SO ORDERED.