**ALBANY INSURANCE COMPANY; Atlas Assurance Company of America; Central National Insurance Company of Omaha, in Rehabilitation (previously known as Central National Insurance Company of Omaha); and Guarantee Insurance Company, Appellants,**

v.

**Don W. STEPHENS (Commissioner of Insurance for the Commonwealth of Kentucky as Liquidator for Delta America Re Insurance Company); Finland General Insurance Company, Limited, a/k/a Finnish Industrial and General Insurance Company, Limited; Universal Reinsurance Corporation; Irish National Insurance Company; Syndicate 33, I.N. Thompson, Syndicate of Lloyds of London; Orion Insurance Company; G.E. Oatley Underwriting Agencies, Limited; Transport Industries Insurance Companies, Limited; Mercantile Mutual Holdings, Limited; Vanguard Insurance Company; Southern Pacific Insurance Company, Limited; PWS Group; Hansa Marine Insurance Company (UK) Limited/Vesta (UK) Insurance Company, Limited, as underwritten for/by London Scandinavian Underwriters, Inc.; Guardian Royal Exchange Assurance Company, Limited; Continental Insurance Company; and Fremont Indemnity Company, Appellees.**

No. 94–CA–571–MR.

Court of Appeals of Kentucky.

Oct. 27, 1995.

Case Ordered Published by
Court of Appeals Dec. 15, 1995.

Discretionary Review Denied by
Supreme Court Aug. 21, 1996.

David A. Brill, Jan M. West, Goldberg & Simpson, Louisville (briefed) and David A. Brill, Goldberg & Simpson (argued), Louisville, for Appellants.

Kevin M. McGuire, Shannon M. Johnson, Jackson & Kelly, Lexington, William F. Costigan, Andrew J. Costigan, Costigan & Berns, New York City (briefed), and Jacqueline S. Duncan, Jackson & Kelly, Lexington (argued), for Appellee Don W. Stephens.

Before LESTER, C.J., and JOHNSTONE and WILHOIT, JJ.

## OPINION

JOHNSTONE, Judge.

The single question to be resolved in this appeal is whether KRS 304.33–330 precludes appellants from setting off premiums owed the estate of Delta America Re Insurance Company, a company in liquidation, against losses owed by Delta to appellants. The trial judge concluded that appellants were not entitled to the requested set-off, upholding the liquidator's partial rejection of appellants' proofs of claim. Finding no error in the decision of the trial judge, we affirm.

This appeal arises from the context of complex litigation stemming from the declaration of Delta's insolvency in 1985. Appellants timely filed proofs of claim with the liquidator of Delta, calculated by netting the amounts due Delta against the losses owed by Delta to appellants. They asserted that this netting calculation was consistent with, and pursuant to, express language of certain reinsurance contracts or treaties entered into between the various insurance and reinsurance companies who are parties to this litigation. The liquidator, however, partially rejected appellants' proofs of claim on the ground that the attempted set-off contravened the language of KRS 304.33–330, the "Kentucky Setoff Statute," and, in response to appellants' filing of objections, sought a ruling from the Franklin Circuit Court as to appellants' entitlement to net losses against premium. On February 4, 1994, the trial judge entered the order precipitating this appeal.

Pertinent to our consideration is the following portion of that order:

KRS 304.33–330 states:

No setoff or counterclaim shall be allowed in favor of any person where . . .

(d) the obligation of the person is to pay premiums, whether earned or unearned, to the insurer.

The term "insurer" is defined in KRS 304.1–040 to include:

[E]very person engaged as principal and as indemnitor, surety or contractor in the business of entering into contracts of insurance.

"Insurance" is defined as "a contract whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called 'risks'." KRS 304.1–030. "Person" is defined as:

[A]n individual, insurer, company, association, organization, Lloyd's insurer, society, reciprocal insurer or inter-insurance exchange[s], partnership, syndicate, business trust or corporation, and every other related entity. [KRS 304.1–020].

From an examination of the applicable statutory provisions, it is apparent that the Petitioners' contentions regarding the set-off provisions are erroneous. Petitioners are included in the statutory definition of "persons" and they currently owe payments to the insolvent company. KRS 304.33–330 specifically prohibits setting off premiums. Allowing Petitioners to set off their losses to the exclusion of other creditors would contravene both the letter and the spirit of the Insurance Code. If setoff were permitted, it would give Petitioners a distinct advantage over other claimants. Neither are Petitioners saved by denominating their claims as "recoupment" claims. The General Assembly, in enacting this provision, sought to include all demands which might be asserted against the insolvent institution. Petitioners' additional arguments, that the equitable right of setoff survives the enactment of KRS 304.33–330 and the Bankruptcy Code allows setoff, are equally without merit. While the Bankruptcy Code permits setoff, Kentucky law specifically prohibits it. Additionally, the equitable right of setoff was clearly supplanted by the provisions of the insurance code.

We are in complete agreement with the trial judge's construction of the statutes and appli-

cation of those enactments to the facts presented.

Appellants' insistence that KRS 304.33–330(2)(d) is inapplicable to transactions between reinsureds and reinsurers cannot be reconciled with either the statutory definitions cited by the trial judge or the plainly expressed purpose of the subtitle embodied in the following sections of KRS 304.33–010:

(3) Liberal construction. This subtitle shall be liberally construed to effect the purpose stated in subsection (4) of this section.

(4) Purpose. *The purpose of this subtitle is the protection of the interests of insureds, creditors, and the public generally, with minimum interference with the normal prerogative of proprietors,* through:

(a) Early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures, neither unduly harsh nor subject to the kind of publicity that would needlessly damage or destroy the insurer;

(b) Improved methods for rehabilitating insurers, by enlisting the advice and management expertise of the insurance industry;

(c) Enhanced efficiency and economy of liquidation, through clarification and specification of the law, to minimize legal uncertainty and litigation;

(d) *Equitable apportionment of any unavoidable loss;*

(e) Lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extension of the scope of personal jurisdiction over debtors of the insurer outside this state; and

(f) Regulation of the insurance business by the impact of the law relating to delinquency procedures and substantive rules on the entire insurance business.

KRS 304.33–010 (emphasis added). Guided by these clear statements of legislative purpose and mindful of the statutory definitions, we turn to an examination of the decision below.

The propriety of the trial judge's analysis of Delta's status as an "insurer" is borne out not only by KRS 304.1–040, but also by KRS 304.5–130's definition of "reinsurance" as:

a contract under which an originating insurer (called the "ceding" insurer) procures insurance for itself in another insurer (called the "assuming" insurer or the "reinsurer") with respect to part or all of an insurance risk of the originating insurer.

Nor is there any doubt that the insurance code's previously cited definition of "person" is sufficiently broad to encompass appellants as "companies" or "other related legal entities."

The fact that other jurisdictions may have reached disparate conclusions founded in their peculiar statutory structures has little impact upon our interpretation of the distinct principles codified in the Kentucky Insurance Code. The importance of viewing the set-off issue in the context of each state's particular statutory framework was recognized by the Court in *Kemper Reinsurance Company v. Corcoran,* 79 N.Y.2d 253, 582 N.Y.S.2d 58, 62, 590 N.E.2d 1186, 1190 (1992), at least impliedly limiting the applicability of its holding in this footnote:

FN1. Superintendent Van Schaick acknowledged that the statute left unanswered the question of whether premiums could be set off. He believed such offsets should be allowed, given the Legislature's tendency to extend the principle of offset, but stated that the matter would probably have to be decided by the courts (see, Mem. of Superintendent Van Schaick dated Mar. 15, 1932, Bill Jacket, L. 1932, ch. 191, at 9). Some jurisdictions expressly prohibit setting off premiums (see, e.g., Conn.Gen.Stat. Annot. § 38a–932; Haw. Rev.Stat. § 431:15–319[b][4]; Idaho Code § 41–3330[2][d]; Ind.Code § 27–9–3–28[b][4]; Iowa Code Annot. § 507C.30[2][d]; Ky.Rev.Stat. Annot. § 304.33–330[d][d]; Minn.Stat. Annot. § 60B.34[2][d]; Mont.Code Annot. § 33–2–1359[2][d]; N.H.Rev.Stat. Annot. § 402–C:34[II][d]; N.M.Stat. Annot. § 59A–41–45[B][4]; Pa.Stat. Annot., tit. 40, § 221.32; S.C.Code Annot. § 38–27–490[b][4]; Utah

Code Annot. § 31A–27–323[2][[d]; Wis. Stat. Annot. § 645.56[2][[d]. Defendant does not contend in this case, however, that such a prohibition exists under section 7427 of the Insurance Law.

*Corcoran,* 582 N.Y.S.2d at 62, 590 N.E.2d at 1190.

Finally, appellants' resort to the common law falls short of undermining the validity of the trial judge's decision. The fallacy inherent in that approach was addressed by the court rejecting a similar tack in *Bluewater Insurance Limited v. Balzano,* 823 P.2d 1365, 1374 (Colo.1992):

▮ The foregoing statutory analysis disposes of this case, and a common law analysis would not lead to a different result. *See Allendale Mut. Ins. Co. v. Melahn,* 773 F.Supp. 1283 (W.D.Mo.1991) (no common law right to offset in Missouri). A common law base line, urged by the reinsurers, therefore is inapposite and serves only to deflect attention from the regulated character of the insurance business in general and of reinsurance contracts in particular. Nevertheless, because the reinsurers invite us to follow a line of late nineteenth century United States Supreme Court cases which purportedly establish the equity of broadly applying the principle of the offset of mutual debts and credits, we will discuss these and other cases briefly in order to dispel any impression that there might be a significant tension between Colorado's regulation of reinsurance and the Supreme Court's early equity jurisprudence.

In sum, we are persuaded that the rationale of the trial judge accurately reflects the legislative intent in precluding set-offs and the proper construction of the statutes employed to achieve that end.

The judgment of the Franklin Circuit Court is affirmed.

ALL CONCUR.