MILLENIUM ENVIRONMENTAL, INC., Appellant-Respondent, v CITY OF LONG BEACH OF STATE OF NEW YORK, Respondent-Appellant. [827 NYS2d 171]—

In an action for a judgment declaring, inter alia, that the defendant is obligated to pay the plaintiff certain disposal fees pursuant to a solid waste disposal agreement, the plaintiff appeals from so much of an order of the Supreme Court, Nassau County (Warshawsky, J.), entered April 27, 2005, as granted those branches of the defendant's motion which were, in effect, for summary judgment declaring that the plaintiff is not entitled to recover service charges on unpaid disposal fees for the time that the action was voluntarily stayed and that such service charges should not be compounded, and the defendant cross-appeals, as limited by its notice of appeal and brief, from so much of the same order as denied those branches of its motion

which were, in effect, for summary judgment declaring that the service charges were barred by General Municipal Law § 3-a and laches and that the service charges, or any other applicable prejudgment interest amounts, were to be calculated on the balance of unpaid disposal fees due after application of the setoff for rent owed by the plaintiff.

Ordered that the order is modified, on the law, by deleting the provisions thereof denying those branches of the motion which were, in effect, for summary judgment declaring that the service charges were barred by General Municipal Law § 3-a and that the service charges, or any other applicable prejudgment interest amounts, were to be calculated on the balance of unpaid disposal fees due after application of the setoff for rent owed by the plaintiff, and substituting therefor provisions granting those branches of the motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, with costs to the defendant, and the matter is remitted to the Supreme Court, Nassau County, for the entry of a judgment making the appropriate declarations in accordance herewith.

In 1984 the City of Long Beach entered into an agreement to lease certain premises to S & S Incinerator Joint Venture (hereinafter S & S) for use as a solid waste disposal facility. In 1986 S & S entered into a solid waste disposal agreement with the City whereby the City agreed, inter alia, to dispose of its solid waste at the S & S facility. S & S subsequently assigned its interests in both agreements to Long Beach Recycling and Recovery Corporation (hereinafter LBRRC). On May 12, 1992, the City and LBRRC executed two new agreements: a solid waste disposal agreement (hereinafter the disposal agreement) in which the City agreed, inter alia, to deliver its solid waste to the subject facility and to pay an annual disposal fee, in 12 equal, monthly installments, and a new lease (hereinafter the lease) allowing LBRRC to continue operating the premises as a solid waste disposal facility. In 1995 LBRRC assigned its rights under the lease and disposal agreement to Environmental Waste Incineration, Inc. (hereinafter EWI).

In October 1996, following the commencement of an enforcement action against EWI by the New York State Department of Environmental Conservation, the City requested, inter alia, an immediate cessation of the facility's operations and revocation of the facility's environmental permits. In November 1996 EWI stopped making rental and other payments due under the lease. In December 1996 the City issued notices of default to EWI under both the lease and the disposal agreement and stopped paying monthly installments of the annual fee under the dis-

posal agreement. Pursuant to a plea agreement entered in the enforcement action, EWI ceased operating the waste disposal facility on or before March 31, 1997. At or about the same time, EWI and others commenced the instant action seeking a declaration, inter alia, that the City was obliged to pay the unpaid disposal fees. After issue was joined, EWI filed a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code, and the Supreme Court stayed the action. The plaintiff, Millenium Environmental, Inc., purchased EWI's assets, including this action, during the bankruptcy proceedings. After the stay was lifted, the City asserted counterclaims for unpaid rent, water and sewage charges, and environmental remediation costs. Thereafter, the Supreme Court granted the plaintiff summary judgment on the issue of liability regarding its cause of action to recover the disposal fees. The Supreme Court further granted the City summary judgment on the issue of liability on its counterclaims, and authorized it to assert such claims as a setoff against the plaintiff's claim for unpaid disposal fees, with the aggregate amount of the setoff not to exceed the amount of the plaintiff's claim. The court referred the matter to a Special Referee to hear and report on damages.

Prior to the inquest on damages, however, the City moved, in effect, for partial summary judgment on certain issues. The City, inter alia, challenged the plaintiff's entitlement to recover contractual "service charges" of 1.5% per month on unpaid disposal fees, and argued that, to the extent that such service charges could be imposed, they should be awarded only on the net balance remaining after application of the City's setoff.

The Supreme Court determined the motion by declaring, inter alia, that the plaintiff was entitled to collect the service charges through entry of judgment, except for the period of approximately four years during which the action was voluntarily stayed, and that such charges were to be calculated on the balance of disposal fees due the plaintiff prior to application of the City's setoff. The parties appeal and cross-appeal from stated portions of the order.

The Supreme Court erred in determining that the plaintiff may collect the contractual service charges against the City. The disposal agreement made clear that the City's "Annual Disposal Fee shall be made by the City in twelve . . . equal installments each due on the last day of each month in each Contract Year." Moreover, the City "unconditionally guarantee[d] prompt and timely payment of the Annual Disposal Fee," and agreed, inter alia, that its failure or refusal to pay arrearages for 90 days or more would give the plaintiff's predecessor the right "to . . . re-

fuse to accept further deliveries of solid waste until such time as payment is made."

In light of the City's unconditional obligation to timely pay the waste disposal fees each month, it is clear that the 1.5% per month service charge, which was to be assessed only "[i]f the City fails to make a payment when due," was not, in fact, a true service charge (*see Consolidated Edison Co. of N.Y. v Yeshiva Univ.*, 67 AD2d 895 [1979]). Admittedly, in the sense that interest consists of an amount "paid . . . to or for the account of [a] lender in consideration for making [a] loan or forbearance as defined by the banking board pursuant to [Banking Law § 14-a]" (General Obligations Law § 5-501 [2]; *see F.K. Gailey Co. v Wahl*, 262 AD2d 985 [1999]; *Protection Indus. Corp. v Kaskel*, 262 AD2d 61 [1999]), the service charge here is not technically interest (*see Sandra's Jewel Box v 401 Hotel*, 273 AD2d 1, 3 [2000]; *943 Lexington Ave. v Niarchos*, 83 Misc 2d 803, 804 [1975]). Nevertheless the service charge clearly amounted, in effect, to a contractual rate of prejudgment interest charged on a defaulted obligation (*see Bristol Inv. Fund, Inc. v Carnegie Intl. Corp.*, 310 F Supp 2d 556, 562 [2003]) in that it was designed to compensate the aggrieved contractual party for the loss of the use of money or its equivalent "because of a breach of performance of a contract" (CPLR 5001 [a]).

Depending upon the circumstances of the particular case, such contractual "default" rates have been either upheld as lawful (*see F.K. Gailey Co. v Wahl, supra; Binghamton Precast & Supply v A. Servidone, Inc./Anthony Constr. Corp.*, 257 AD2d 731 [1999]; *Consolidated Edison Co. of N.Y. v Yeshiva Univ., supra*) or struck down as unconscionable (*see Sandra's Jewel Box v 401 Hotel, supra; 943 Lexington Ave. v Niarchos, supra*). Here, however, even assuming that the 1.5% per month "service charge" is not unconscionable, it is nevertheless unenforceable in the face of General Municipal Law § 3-a (1), which provides in relevant part that "the rate of interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed nine per centum per annum."

In light of the City's unambiguous and unconditional obligation under the disposal agreement to timely pay monthly fees, it is clear that the plaintiff's predecessors in this case held an "accrued claim," within the meaning of General Municipal Law § 3-a (1), when the City defaulted under the disposal agreement (*see Acme Bldrs. v County of Nassau*, 36 AD2d 317, 320 [1971], *affd* 31 NY2d 924 [1972]). Therefore, we find that the plaintiff, upon the City's default under the disposal agreement, was

entitled, at most, to statutory interest pursuant to General Municipal Law § 3-a (1) on the defaulted obligation, and not to the more onerous default rate specified in the disposal agreement.

Section 13.9 of the agreement provides that, "[i]f any provision of this Agreement is held to be unenforceable as written by any court having appropriate jurisdiction, the provision shall be enforced to the extent reasonable under the circumstances." Thus, the plaintiff is entitled to prejudgment interest on its accrued claim at the maximum statutory rate of nine per centum per annum.

In light of our determination, the plaintiff's contention regarding collection of service charges for the period that the action was stayed has been rendered academic.

The Supreme Court also erred in determining that the "interest on the net balance rule" did not apply. The rule, which requires that mutual debts be offset against each other before an award of prejudgment interest (*see Binghamton Precast & Supply v A. Servidone, Inc./B. Anthony Constr. Corp., supra* at 732; *Sloan v Pinafore Homes*, 38 AD2d 718 [1972]), applies where debts are "mutual" (*Sloan v Pinafore Homes, supra* at 719, citing *Prindle v Rockland Tr. Corp.*, 263 App Div 873 [1942]). "[D]ebts and credits are mutual when they are 'due to and from the same person in the same capacity' " (*Matter of Midland Ins. Co.*, 79 NY2d 253, 259 [1992], quoting *Beecher v Vogt Mfg. Co.*, 227 NY 468, 473 [1920]). The debts may arise from different transactions, so long as mutuality of identity and capacity exist (*see Matter of Midland Ins. Co., supra* at 260, n 2). "Contracting principals, who are debtors and creditors of each other by virtue of entry into a contract or contracts, have the same legal capacity and may set off debts against each other" (*Matter of Midland Ins. Co., supra* at 264).

The City and the plaintiff's predecessors entered into the disposal agreement and the lease as contracting principals. Thus, identity of capacity was established and the debts are mutual. Accordingly, the amount of the City's counterclaim should be subtracted from the amount of the plaintiffs's damages at accrual of its claim, prior to the calculation of prejudgment interest at the statutory rate.

The parties' remaining contentions are without merit.

Since this is a declaratory judgment action, we remit the matter to the Supreme Court, Nassau County, for the entry of a judgment making the appropriate declarations (*see Lanza v Wagner*, 11 NY2d 317 [1962], *appeal dismissed* 371 US 74 [1962], *cert denied* 371 US 901 [1962]). Adams, J.P., Goldstein, Fisher and Lifson, JJ., concur.