■ GRANITE STATE INSURANCE COMPANY et al., Appellants, v TRANSATLANTIC REINSURANCE COMPANY, Respondent. [19 NYS3d 13]—

Order, Supreme Court, New York County (O. Peter Sherwood, J.), entered December 24, 2013, which, to the extent appealed from, denied plaintiffs' motion to dismiss certain of defendant's affirmative defenses, and denied the motion of plaintiff Granite State Insurance Company (Granite State) for partial summary

judgment, unanimously affirmed, without costs. Order, same court and Justice, entered June 18, 2014, which effectively granted reargument of plaintiffs' motion to dismiss, and, upon reargument, adhered to its prior order, and which denied plaintiffs' renewal motion, unanimously affirmed, without costs.

In the early 1980s, plaintiffs insurance companies (collectively the AIG Insurers) issued excess liability insurance policies to a number of corporate insureds. To reduce their risk, the AIG Insurers purchased reinsurance coverage for the policies from defendant, Transatlantic Reinsurance Company (TRC). The AIG Insurers allege that pursuant to the reinsurance certificates, for each underlying excess liability policy, the relevant AIG Insurer shared with TRC a portion of the premium that insurer had received from its corporate insured in exchange for TRC's assuming a percentage of the losses incurred under that policy.

The certificates provide that TRC's liability would follow the AIG Insurer's liability in accordance with the terms and conditions of the underlying excess liability policy. The certificates further provide that upon receipt by TRC of satisfactory evidence of payment of a loss for which the reinsurance was provided, TRC would reimburse the relevant AIG Insurer for TRC's share of the loss (the loss requirement). In addition, the AIG Insurers warranted that they would "retain for [their] own account, subject to treaty reinsurance only, if any, the amount specified on the face of this Certificate" (the retention warranty). The certificates also provide that they could not be assigned without TRC's written consent (the assignment clause).

In or about mid-2011, the AIG Insurers entered into a financial reinsurance transaction known as a "loss portfolio transfer" (LPT), whereby the AIG Insurers transferred certain asbestos liabilities arising under their insurance policies to nonparty National Indemnity Company (NICO). The LPT, which was governed by eight separate but integrated agreements, was structured in two parts. In the first part, nonparty Eaglestone Reinsurance Company agreed to reinsure the relevant asbestos liabilities of the AIG Insurers. In the second part, Eaglestone agreed to retrocede to NICO a portion of the risks assumed by Eaglestone. Each part of the LPT was subject to an aggregate limit of liability. The AIG Insurers also transferred to NICO the authority to handle the underlying insurance claims, pay losses, control litigation, and collect reinsurance payments from TRC.

In July 2012, the AIG Insurers commenced this action

against TRC alleging breach of contract and seeking monetary damages and declaratory relief. According to the complaint, the AIG Insurers have made payments on losses on the underlying excess liability policies, and have billed TRC for its share in accord with the terms of the reinsurance certificates. The AIG Insurers allege that TRC initially paid the amounts due, but stopped making payments in March 2012, which was after the LPT was entered into. TRC answered the complaint and raised various counterclaims and affirmative defenses. As relevant here, TRC alleged that the AIG Insurers had breached the certificates' retention warranty and assignment clause by entering into the LPT, and that the AIG Insurers had failed to satisfy the certificates' loss requirement.

The AIG Insurers moved, pursuant to CPLR 3211 (b), to dismiss these affirmative defenses. By separate motion, Granite State moved, pursuant to CPLR 3212, for partial summary judgment with respect to three of the reinsurance certificates. In an order entered December 24, 2013, the motion court denied both motions. The AIG Insurers subsequently filed an unsuccessful motion for leave to reargue and renew the dismissal motion, and this appeal ensued.

In moving to dismiss an affirmative defense pursuant to CPLR 3211 (b), the plaintiff bears the heavy burden of showing that the defense is without merit as a matter of law (*534 E. 11th St. Hous. Dev. Fund Corp. v Hendrick*, 90 AD3d 541, 541 [1st Dept 2011]). The allegations set forth in the answer must be viewed in the light most favorable to the defendant (*182 Fifth Ave. v Design Dev. Concepts*, 300 AD2d 198, 199 [1st Dept 2002]), and "the defendant is entitled to the benefit of every reasonable intendment of the pleading, which is to be liberally construed" (*534 E. 11th St.*, 90 AD3d at 542). Further, the court should not dismiss a defense where there remain questions of fact requiring a trial (*id.*).

Judged by these standards, the motion court properly found that the AIG Insurers failed to meet their burden. In support of their motion, the AIG Insurers submitted, through an attorney professing no personal knowledge, an unsigned, undated copy of only one of the eight agreements comprising the LPT. We agree with the motion court that the failure to submit executed copies of all of the transaction documents warranted denial of the AIG Insurers' prediscovery motion (*see e.g. Cendant Car Rental Group v Liberty Mut. Ins. Co.*, 48 AD3d 397, 398 [2d Dept 2008] [the plaintiffs' failure to submit signed copy of agreement warranted denial of motion]).

Even if we were to consider the unsigned document, it does not establish, as a matter of law, that TRC's affirmative defenses lack merit. Some of the defenses allege that, by entering into the LPT, the AIG Insurers violated the reinsurance certificates' retention warranty, which requires them to retain a specified amount of liability, "subject to treaty reinsurance only." The AIG Insurers maintain that the LPT constitutes treaty reinsurance within that exception to the retention warranty. According to the AIG Insurers, treaty reinsurance can, like the LPT, be retroactive, i.e., reinsuring already-existing insurance policies. TRC, on the other hand, contends that treaty reinsurance is exclusively prospective in nature, i.e., reinsuring only against future losses under yet-to-be-issued policies. Because the LPT reinsures already-existing policies, TRC maintains that it cannot be treaty reinsurance.

In declining to dismiss the retention warranty defenses, the motion court concluded that, because the LPT is retroactive, it is not treaty reinsurance. Although we agree that these defenses should not be dismissed, the motion court's finding that the LPT does not constitute treaty reinsurance was premature. The question of whether the LPT is or is not treaty reinsurance cannot be resolved as a matter of law at this stage of the proceedings. The term "treaty reinsurance" is not defined in the reinsurance certificates, and it is not clear from the four corners of those documents whether treaty reinsurance is exclusively prospective. Nor does the record establish a universally-accepted definition of this term in the specialized reinsurance industry. Indeed, both parties point to reinsurance treatises providing support for their respective positions. Because the limited record on the original motion shows that the term may be reasonably susceptible to differing meanings, it cannot be construed as a matter of law on this CPLR 3211 motion (*see Telerep, LLC v U.S. Intl. Media, LLC*, 74 AD3d 401, 402 [1st Dept 2010]).

In concluding that treaty reinsurance is only prospective in nature, the motion court placed undue emphasis on dicta contained in *Unigard Sec. Ins. Co. v North Riv. Ins. Co.* (79 NY2d 576 [1992]) and *Matter of Midland Ins. Co.* (79 NY2d 253 [1992]). In these decisions, the Court, in generally describing treaty reinsurance, stated that it is "obtained in advance of actual coverage" (*Unigard*, 79 NY2d at 579 n 1; *Midland*, 79 NY2d at 258). These cases did not address the precise question

presented here, and did not explicitly hold that treaty reinsurance can never be retroactive.[1]

The motion court correctly declined to dismiss TRC's affirmative defense asserting that the AIG Insurers failed to satisfy the reinsurance certificates' loss requirement. As noted earlier, TRC was responsible for reimbursing the AIG Insurers upon receipt of satisfactory evidence of payment of a "loss," which is defined as only those amounts "actually paid by [the AIG Insurers]" under the reinsured polices. We agree with the motion court that the AIG Insurers failed to submit sufficient evidence of payment of the losses. The conclusory affidavit and scant documentary proof presented do not establish, at this prediscovery stage of the proceedings, that this affirmative defense fails as a matter of law. Likewise, no basis exists to dismiss TRC's affirmative defenses asserting that the LPT is an impermissible assignment under the reinsurance certificates. It cannot be determined, on this limited prediscovery record, whether the AIG Insurers transferred all of their interests in the certificates.

Because TRC's affirmative defenses remain to be litigated, and in the absence of discovery, Granite State's motion for partial summary judgment was properly denied. Granite State unpersuasively argues that TRC waived its defenses to the LPT by making payments between 2008 and 2011 without a reservation of rights. Since the defenses are based on the LPT, TRC could not have waived them by making payments before the LPT was entered into (*see Russo v Rozenholc*, 130 AD3d 492, 496 [1st Dept 2015] ["A party asserting a waiver of rights has the burden of establishing that the purported waiver constituted an intentional, voluntary relinquishment of a *known* right" (emphasis added)]). With respect to payments made after the LPT, issues of fact exist as to when TRC obtained full knowledge of the LPT's terms.[2]

The motion court properly denied summary judgment on Granite State's unpleaded account stated claim. The affidavit

1. We note that in another case, the Court of Appeals suggested, also in dicta, that treaty reinsurance can be retroactive (*see Travelers Cas. & Sur. Co. v Certain Underwriters at Lloyd's of London*, 96 NY2d 583, 587 [2001] ["carrier seeking to reduce potential financial losses from policies *issued* to a class of customers or an industry may purchase treaty reinsurance" (emphasis added)]).

2. Because we are affirming the motion court's denial of Granite State's motion, we need not reach TRC's alternative arguments that its payment of one invoice cannot constitute a waiver of objections to future invoices, and that enforcement of the purported waiver would be tantamount to creating coverage where none exists.

of TRC's Chief Claims Officer raises triable issues of fact as to whether TRC made timely objections to the invoices (*see Rachel Bridge Corp. v Dishi*, 277 AD2d 176, 176 [1st Dept 2000]).

Although the motion court's June 18, 2014 order purported to deny the AIG Insurers' reargument motion, it addressed the merits, thus effectively granting reargument and making the order appealable (*see 21st Century Diamond, LLC v Allfield Trading, LLC*, 88 AD3d 558, 559 n [1st Dept 2011]). On reargument, the motion court properly adhered to its original determination. The motion court providently exercised its discretion in denying the motion for leave to renew. The AIG Insurers did not provide a reasonable justification for failing to submit the additional affidavit and documents in support of their original motion (*see Leighton v Lowenberg*, 125 AD3d 427, 427-428 [1st Dept 2015]). Concur—Mazzarelli, J.P., Sweeny, Saxe, Richter and Manzanet-Daniels, JJ.