OPINION OF THE COURT
Titone, J.
On a question certified to this Court from the Second *330 Circuit Court of Appeals, we are asked to determine whether a multiple dwelling exempt from the Rent Stabilization Law by virtue of its cooperative ownership reverts to its former rent-regulated status upon foreclosure. Relying on the plain language of the Rent Stabilization Law, we answer that question in the affirmative, and reject plaintiffs claims that reversion to regulated rent constitutes an unconstitutional physical or regulatory taking or a due process deprivation.
I
Plaintiff, the Federal Home Loan Mortgage Corporation (FHLMC), is a Federal corporation chartered as part of the Emergency Home Finance Act of 1970 (12 USC §§ 1451-1459). Its statutory mission is to foster home ownership by increasing the amount of financing available to the residential mortgage market. To achieve this goal, FHLMC generally purchases investment-quality mortgages from primary lenders, and sells them to investors as securities packages. Defendant, the New York State Division of Housing and Community Renewal (DHCR), is the State agency charged with administering and enforcing the rent-regulatory laws of New York City and State.
In July 1986, plaintiff became the assignee of a $1.45 million mortgage on an 83-unit multiple dwelling located in Brooklyn, New York. There is no dispute that at that time the building was a rental housing accommodation subject to regulation under the New York City Rent Stabilization Law (RSL) (see, Administrative Code of City of NY § 26-501 et seq.).
The building was subsequently converted to cooperative ownership, and title to the building passed from the sponsor to a cooperative apartment corporation. Although FHLMC had the right to demand that its mortgage be satisfied upon the conversion, it elected not to do so, and approved the conversion. In compliance with the Martin Act (see, General Business Law § 352-eeee), a cooperative offering plan setting forth the terms of the offering was submitted to and approved by the New York State Department of Law, was accepted for filing by the Attorney-General, and was also provided to all tenants who occupied the building. Existing tenants were given the option to purchase the shares allocated to their respective units, and tenants who chose to purchase were issued long-term proprietary leases that superseded their existing leases. The offering plan was expressly made subject to the underlying mortgage held by plaintiff and a wrap-around mortgage of $2 million held by the sponsor.
*331 Of the building’s 83 units, 3 were purchased by existing tenants, and 17 were purchased by outsiders. Because the offering plan was a "non-eviction plan” as defined in the Martin Act (see, General Business Law § 352-eeee [1] [b]), the rents of the 63 apartments occupied by existing tenants who declined the purchase option remained regulated by the RSL. These units are not the subject of this appeal.
The cooperative apartment corporation defaulted on the mortgage and FHLMC foreclosed and purchased the property at a public foreclosure sale. Upon foreclosure, the proprietary leases were cancelled. The purchasers ceased ownership of their allocable shares, but remained liable on the personal loans acquired to purchase those shares.
Since the foreclosure sale, FHLMC has failed to collect rent and has declined to provide renewal leases to the former purchasers and to tenants who took occupancy after the conversion. FHLMC cites its lack of expertise in operating a multiple dwelling and inability to ascertain the proper rent to charge for the units as justification for those omissions.
Plaintiff commenced this declaratory judgment action in Federal District Court,[1] seeking a ruling as to whether, upon dissolution of the cooperative corporation, the units of former purchasers and tenants who moved in after the conversion are subject to rent regulation. Ruling in defendant’s favor on the parties’ cross motions for summary judgment, the court declared that "upon the demise of the cooperative, the building reverted to rent regulatory status.” (854 F Supp 151, 165.) In so holding, the District Court concluded that section 2520.11 (l) of the Rent Stabilization Code, which provides that cooperatives are exempt from regulation under the RSL "so long as they maintain [cooperative] status” (9 NYCRR 2520.11 [l]), is consistent with the RSL’s exemption of cooperatively-owned multiple dwellings, which is lost when the property returns to rental status. Relying on this Court’s holding in Rent Stabilization Assn. v Higgins (83 NY2d 156), the court concluded that plaintiff’s acquiescence in the use of the building as a multiple dwelling defeated the claim that return of the units to regulated status constituted an unconstitutional physical taking. Finding a " 'sufficiently close nexus’ between New York’s interest in protecting the former proprietary lessees from potentially unconscionable rent increases and the regulation *332 at issue” (854 F Supp, at 163), the court found that the statute advanced a legitimate State interest, and thus did not effect an unconstitutional regulatory taking. The court also rejected plaintiff’s claim that the statute and regulation were unconstitutionally vague, reiterating that the statute and regulation alike clearly notify a person of ordinary intelligence that "the exemption from rent regulation applies only to buildings 'not owned as a cooperative’ 'for so long as’ the buildings maintain that status.” (854 F Supp, at 164.)
On appeal, the Second Circuit certified the following question to this Court: "[W]hether, in light of [Federal Home Loan Mortgage Corporation’s] challenge to 9 N.Y.C.R.R. 2520.11 ([l]), units in a rent stabilized building that was converted to cooperative ownership revert to units subject to the Rent Stabilization Law, upon the foreclosure of the cooperative’s underlying mortgage and the return of the building to operation as rental housing”? We accepted the question, which is case-determinative and not controlled by precedent (see, Rules of Court of Appeals 22 NYCRR 500.17), and now answer in the affirmative.
II
Our point of departure is the RSL (Administrative Code §§ 26-50126-520), which governs the regulation of rents for eligible housing units in New York City. The RSL was originally enacted in response to "a severe housing shortage following World War II” and has been "periodically extended” by the Legislature as it perceives a continuing need (Rent Stabilization Assn. v Higgins, 83 NY2d 156, 164-165, cert denied — US —, 114 S Ct 2693, supra). "The central, underlying purpose of the [Rent Stabilization Law] is to ameliorate the dislocations and risk of widespread lack of suitable dwellings” that accompany a housing crisis (Manocherian v Lenox Hill Hosp., 84 NY2d 385, 395-396). Noting their remedial nature, this Court has repeatedly interpreted laws regulating rents broadly to effectuate their intended purpose (see, e.g., Braschi v Stahl Assocs. Co., 74 NY2d 201, 208; Matter of McMurray v New York State Div. of Hous. & Community Renewal, 72 NY2d 1022, 1024).
By its terms, the Rent Stabilization Law applies to "Class A multiple dwellings not owned as a cooperative * * * containing six or more dwelling units which * * * were completed after February [1, 1947]” (Administrative Code § 26-504 [emphasis *333 added]).[2] Defendant DHCR, the agency that has been delegated the "broad mandate to promulgate regulations in furtherance of the rent control and rent stabilization laws” (Higgins, 83 NY2d, at 168, supra), has provided in the Rent Stabilization Code (the Code) that its protections apply to all housing accommodations regulated under the RSL except "housing accommodations contained in buildings owned as cooperatives” "/or so long as they maintain [cooperative] status” (9 NYCRR 2520.11 [l] [emphasis added]). The clear import of this regulation is that once a cooperative reverts to rental status, it is again subject to the RSL’s provisions.
Accordingly, the initial question raised here is whether 9 NYCRR 2520.11 (1), promulgated by defendant DHCR under its rule-making authority, is consistent with the RSL’s exemption for cooperatives. More specifically, plaintiff contends that the absence of any express provision in the RSL directing that the units of a cooperative revert to regulated status upon foreclosure entitles the units to continue to enjoy the benefits of the cooperative exemption. Accordingly, plaintiff argues that the language of DHCR’s regulation limiting the exemption for cooperatives for only "so long as” that type of ownership is maintained impermissibly restricts what is designed to be a permanent statutory exemption for cooperatively owned units.
The plain language of the RSL defeats plaintiff’s proffered analysis. The RSL provides in clear terms that a building otherwise eligible for rent stabilization is exempt from such regulation if "owned as a cooperative.” It follows from the terms of this exemption "that as soon as a multiple dwelling is no longer owned as a cooperative, the Rent Stabilization Law and Code again automatically become applicable to it” (De Santis v White Rose Assocs., 152 Misc 2d 567, 571). In other words, a dissolved cooperative is not a cooperative and thus is not entitled to an exemption under the RSL.
Indeed, upon foreclosure, the condition that warranted the exemption — cooperative ownership — was removed. The statute again has ready application to the building, which is presently a rental property that meets all of the other requirements for regulation. There is no indication that the statute seeks to regulate the building based on anything other than its current status. The statute’s silence on the effect of a foreclosure on a *334 formerly exempt cooperative does not change the analysis. Nothing in the statute’s language suggests that the temporary existence of a condition that qualifies the building for exemption operates to permanently remove the building from regulatory oversight and forever relinquish the rights of tenants to the protections of the emergency rent laws. Consistent with the treatment of other regulatory exemptions, once the reason for the exemption expires or is removed, the building should be treated as all other like buildings subject to regulation (cf., Wilson v One Ten Duane St. Realty Co., 123 AD2d 198, 201 [building formerly exempt from regulation because not used as housing accommodation became subject to regulation after rehabilitated to contain seven housing units]; Matter of Vindigni v Altman, 40 AD2d 707 [exemption for single-family use lost upon resumption of multifamily use]; Gandler v Rosado, 138 Mise 2d 740 [increase from five to six units in loft building subjects building to rent stabilization]). Indeed, such a construction would be inconsistent with the overarching goal of the regulatory scheme, which is to protect tenants — who would otherwise be vulnerable to New York City’s housing crisis— from eviction and spiraling rents. Accordingly, the RSL and the challenged regulation are uniform in effect — the building is exempt for "so long as” it maintains cooperative status — and defendant has not exceeded its rule-making authority in promulgating the regulation.
Ill
Plaintiff urges that serious constitutional takings and due process concerns arise if the units of a foreclosed cooperative revert under the RSL and the Code to regulated status. We perceive no such constitutional infirmities.
We are unpersuaded by plaintiff’s argument that renewed application of the RSL forces it to accept rent-regulated tenants and thus violates the Constitution’s prohibitions against physical takings. An unconstitutional physical taking is effectuated where *'[governmental action * * * compels an owner to endure a permanent physical occupation of its property” (Rent Stabilization Assn. v Higgins, 83 NY2d 156, 171, supra; Yee v Escondido, 503 US 519, 522-524). In Higgins, this Court ruled that, notwithstanding the fact that rent regulations enlarging the class of family members entitled to rent protection may have potentially required the owner to rent to a stranger, no new use of the property was being forced upon the owner, and thus no physical occupation of the property had occurred (id., at 172).
*335 Similarly, here, plaintiff FHLMC voluntarily purchased the occupied building and acquiesced in its use as rental housing. Plaintiff chose not to demand full payment of its loan upon conversion of the premises to noneviction cooperative ownership, although it had the option to do so. At that time, the RSL and Code provisions were in effect and gave clear notice that upon loss of cooperative status the building would be subject to rent regulation. Plaintiff again acquiesced in this use of the property when it bought the building at foreclosure with knowledge that it was occupied and to be operated as a rental accommodation. Indeed, the essence of plaintiffs dispute is not that it is being forced to use the property in a new or undesirable manner, but that the rent it charges and terms of the rental leases should be market-based and not subject to regulation under the RSL. Under these circumstances, no new use of the property has been forced upon plaintiff, and no unconstitutional physical taking has been effectuated (cf., Seawall Assocs. v City of New York, 74 NY2d 92).
Nor will a regulatory taking result. The legal framework for finding a regulatory taking is well settled in this State. As we recently reiterated in Manocherian v Lenox Hill Hosp. (84 NY2d 385, supra), regulation of private property rises to the level of an unconstitutional taking if the regulation (1) denies the owner all economically viable use of the property or (2) does not substantially advance a legitimate State interest (id., at 392, quoting Seawall Assocs. v City of New York, 74 NY2d 92, supra). Focusing on the second prong of the test, plaintiff contends that no legitimate State interest is substantially served by granting the protections of the RSL to former proprietary lessees of a failed cooperative corporation. Specifically, plaintiff equates this "special treatment” of the former shareholders to the special protections granted to hospitals that this Court found objectionable in Manocherian (supra). No such analogy should be made.
The statute at issue in Manocherian operated to protect hospitals, who were nonoccupying tenants of record, by granting the hospitals renewal leases based on the occupancy of subtenants, who were hospital employees. This legislation resulted in near-perpetual occupation of the property by the hospitals and provided no true eviction protection to the real tenants, who could be effectively evicted upon termination of their employment with the hospital. The Court concluded that this scheme did not substantially advance a legitimate State interest because in aiding hospitals to give a fringe benefit — hous *336 ing — to its employees, it directly contravened two of the key goals of rent regulation — "occupant protection and eventual market redemption” (84 NY2d, at 394).
Here, the RSL and the Code do not purport to give former shareholders of failed cooperative corporations special treatment. Regardless of prior status, upon foreclosure the building is simply treated in the same manner as other New York City housing accommodations that are regulated under the RSL and former proprietary lessees become renters in a market that is plagued by a housing emergency. They are given no further protections than other similarly situated tenants threatened with the loss of their homes, and the same legitimate State interests served by application of the RSL in a housing shortage — "preventing eviction and resulting vulnerability to homelessness of the identified beneficiaries” — are advanced here {Higgins, 83 NY2d, at 174). Indeed, we perceive no reason why these tenants should be penalized because of their prior status as shareholders in a failed cooperative.
Given our conclusion that the RSL and the Code have plain and uniform application to a cooperative upon its demise, there is also no merit to plaintiffs contention that the law is unconstitutionally vague because it gives no notice to lenders that reversion to rent-regulated status is possible. Plaintiff claims that no such reversion was ever intended by the Legislature because no precise regulatory provision explains how rents are to be calculated for such units upon reversion to rent-regulated status. Contrary to plaintiffs contention, the regulations provide several viable mechanisms for setting the initial rent, including a "catchall” or default provision, which applies the "rent reserved in the last effective lease” where no other specific measure applies (Administrative Code § 26-512 [b] [3]). Should that formula prove unworkable, section 2522.6 of the Code provides that where the rent to be charged is unknown, DHCR may make such determination upon written request (see, 9 NYCRR 2522.6 [a]).[3] In any event, the absence of an express provision detailing the method for setting the initial rent after foreclosure of a cooperative does not negate the otherwise clear application of the RSL and Code to this now noncooperatively owned building.
*337 Nor does reversion to rent stabilization lead to an absurd or unworkable result, as plaintiff contends. The prospective lender, having clear notice of the regulatory impact, is capable of governing its methods of financing cooperatives accordingly to factor in the possibility of reversion to rent regulation upon foreclosure.[4] Indeed, present application of the RSL to this building is sound. Cooperatives and condominiums are exempted from this type of rent regulation because they are not operated for profit and thus do not give rise to the same need for tenant protections (Minton v Domb, 63 AD2d 36, 39). Once the building is no longer so operated, and profit is restored as the owner’s goal, the threats justifying regulation in a housing shortage are revived. Thus, application of the rent regulatory laws to the currently eligible units of this building is necessitated by the fact that a housing emergency has been deemed to exist in New York City and tenants are eligible for protections from spiraling rents (Matter of Ansonia Residents Assn. v New York State Div. of Hous. & Community Renewal, 75 NY2d 206, 216).
Accordingly, the certified question should be answered in the affirmative.
Chief Judge Kaye and Judges Simons, Bellacosa, Smith, Levine and Ciparick concur.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the affirmative.

. Pursuant to 12 USC § 1452 (f), the United States District Courts have original jurisdiction over civil actions in which FHLMC is a party.

. An exception for cooperatives has been included in the Rent Stabilization Law since its inception in 1969 (see, Administrative Code, former ch 51, tit YY).

. Section 2522.6 (a) provides that "[w]here the legal regulated rent or any fact necessary to the determination of the legal regulated rent is in dispute between the owner and the tenant, or is in doubt, or is not known, the DHCR at any time upon written request may issue an order in accordance with the applicable provisions of this Code determining the facts, including the legal regulated rent.”

. Plaintiff contends that lenders generally rely on the enhanced value afforded cooperatives by virtue of their exclusion from rent regulation in valuing them for financing purposes and that the possibility of reversion to rent-stabilized status will cause a loss of incentive to invest in such properties. According to plaintiff, foreclosure "is precisely when the value of the lender’s collateral becomes relevant.” While the problems identified by plaintiff are not to be underestimated, such policy considerations must be addressed to the Legislature. Indeed, an equally compelling argument can be made on behalf of the tenants, who, as a result of the foreclosure, not only remain obligated to pay their rents, but also must repay the money they borrowed to purchase their units.