Edelstein LLC v Rodriguez (2026 NY Slip Op 26011)

[*1]

Edelstein LLC v Rodriguez

2026 NY Slip Op 26011

Decided on January 21, 2026

Civil Court Of The City Of New York, New York County

Meyers, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 21, 2026
Civil Court of the City of New York, New York County

Edelstein LLC, Petitioner,

againstDionis Rodriguez, ALEXANDER HERNANDEZ, JOHN DOE and JANE DOE (LT-302171-24/NY), 
 ROSEMARY POLANCO, JOHN DOE and JANE DOE (LT-302194-24/NY), GARNET HENDERSON, SARA PAYNE, JOHN DOE and JANE DOE (LT-308380-24/NY), 
 TRINY DELEON, JOHN DOE and JANE DOE (LT-313894-24/NY), ALBA ALMENDARIZ, JOHN DOE and JANE DOE (LT-303929-25/NY), Respondents.

Index No. LT-302171-24/NY

Axelrod, Fingerhut & Dennis (Michael J. Ciarlo, Esq.) for PetitionerManhattan Legal Services (Erica Braudy, Esq., John Briggs, Esq., Thomas Honan, Esq.) for Respondents

Adam R. Meyers, J.

Recitation, as required by CPLR § 2219(a), of the papers considered in review of the motions:
Index No. Motion Seqs. NYSCEF Doc. Nos.LT-302171-24/NY 3, 4 24-45, 50-80, 83-93, 95-96LT-302194-24/NY 3, 4 23-43, 49-79, 81-91, 93-94LT-308380-24/NY 2, 3 19-35, 40-69, 71-84LT-313894-24/NY 1, 2 14-32, 37-66, 68-81LT-303929-25/NY 1, 2 11-30, 31-59, 62-72, 74-75Upon the foregoing cited papers, the court's decision and order is as follows:
Petitioner Edelstein LLC commenced these five summary holdover proceedings to recover possession of various apartments at 5000 Broadway in Manhattan. Each proceeding was commenced following service of a notice of termination and nonrenewal under RPL 226-c and [*2]232-a, and each tenancy was purportedly terminated without cause. The subject building is ostensibly owned and operated cooperatively; Petitioner claims standing to bring this proceeding as a shareholder and proprietary lessee under the cooperative owner, and as a sublessor of these units to the Respondents. On the basis of the building's cooperative ownership, Petitioner claims that the units and Respondents' tenancies are exempt from coverage under the Rent Stabilization Law and the Good Cause Eviction Law.
Respondents Dionis Rodriguez, Rosmary Polanco, Garnet Henderson, Triny De Leon and Alba Almendariz have each appeared by counsel and answered the respective petitions, and in these answers they take issue with Petitioner's claimed regulatory exemption. They argue that the particular dynamics of the ownership and operation of this building render it a cooperative in name only—a "sham cooperative," as they put it. For this reason, they claim that Petitioner cannot avail itself of the cooperative exemption from rent stabilization.
All respondents now move in their respective proceedings for leave to conduct discovery relevant to their regulatory status and overcharge defenses. Petitioner opposes each of these motions and moves separately to strike various of the affirmative defenses and counterclaims from their answers. At the parties' joint application, these proceedings have been joined for the argument and determination of these motions. This decision and order will first review the history and current status of the building's cooperative ownership and operation, then address Petitioner's motions to strike Respondents' defenses, and finally Respondents' discovery motions. For the reasons stated below, the court concludes that while some of Respondents' defenses are properly stricken, their regulatory status and overcharge defenses are potentially viable; because information and documents relevant to these defenses are only available to Petitioner, discovery is appropriate.
A. History of the Building's Cooperative Ownership and OperationThe parties generally agree on the sequence of events affecting the building's ownership and cooperative conversion.
In 1982, Stu-Co Realty Associates I Limited Partnership purchased the building (see 1982 Deed, NYSCEF Doc. No. 52 [FN1]
). Stu-Co initiated cooperative conversion proceedings in or around 1986, culminating in the issuance of an approved offering plan in 1987 (see Offering Plan, NYSCEF Doc. No. 53). The offering plan identified Stu-Co as the plan's sponsor and Grenville Owner's Corp. as the cooperative apartment corporation (id.). The plan indicated the offering of 50,899 shares, allocated to 84 of the building's 85 residential unit, excepting Apartment 3B, which was the superintendent's apartment (id.). The offering plan was declared effective in May 1988, at which time the sponsor had "received and accepted subscription agreements from more than 15% or approximately 17.8%" of all applicable dwelling units in the building (see Third Amendment to Offering Plan, NYSCEF Doc. No. 56). Ownership of the building was conveyed from Stu-Co to Grenville on September 15, 1988 (NYSCEF Doc. No. 32), and a mortgage was entered into between Grenville and Crossland Savings, FSB, on the same day (see Mortgage, NYSCEF Doc. No. 58).
By 1990, Stu-Co and Grenville were both facing financial difficulties. The Eleventh Amendment to the Offering Plan indicated that Stu-Co and Grenville were negotiating with Crossland to reduce their monthly mortgage payments, and that if an acceptable arrangement could not be reached, Stu-Co would "cease paying maintenance on the Unsold Shares effective as of January 1, 1991" (see Eleventh Amendment to Offering Plan, NYSCEF Doc. No. 59). This negotiation was apparently unsuccessful, and upon Stu-Co's default the shares held by the sponsor reverted to Grenville and were thereafter issued by Grenville to a holding company under its control.
In 1992, Ronald Edelstein purchased Grenville's mortgage from Crossland (see Assignment of Mortgage, NYSCEF Doc. No. 60), and subsequently commenced foreclosure proceedings against Grenville (see Affirmation of Ronald Edelstein, NYSCEF Doc. No. 51, ¶ 10). These proceedings were resolved in January 1995 with an agreement whereby Grenville would convey to Edelstein all the unsold shares in the possession of its holding company, along with proprietary leases for the 70 apartments associated therewith (see January 1995 Agreement, NYSCEF Doc. No. 74). The agreement also provided with respect to the shares already sold that Grenville would "seek to cause all of the shareholders and proprietary lessees [ ] to transfer, convey and assign their shares and proprietary leases to Edelstein" (id.). Ultimately, by around 1995, Edelstein came to hold through Petitioner Edelstein LLC shares associated with at least 83 of the building's 85 apartments, as well as de facto control over the superintendent's apartment with which no shares are associated (see Proprietary Lease, NYSCEF Doc. No. 34). The parties agree that Petitioner has continued to hold these shares and proprietary leases, without interruption, to date.
In addition to holding virtually [FN2]
all of the cooperative shares, Respondents allege that Ronald (or Ron) Edelstein is reflected as Chief Executive Officer of both Grenville and Five Gems Management Corp.—the building's registered management company—in filings with the New York State Department of State (NYSCEF Doc. Nos. 33, 39). The building's apartments, including the premises at issue herein, are rented out by Petitioner pursuant to subleases (see, e.g., Rodriguez Sublease, NYSCEF Doc. No. 27; Polanco Sublease, Index No. LT-302194-24/NY, NYSCEF Doc. No. 26; Henderson Sublease, Index. No. LT-308380-24/NY, NYSCEF Doc. No. 24; De Leon Sublease, Index No. LT-313894-24/NY, NYSCEF Doc. No. 17; Almendariz Sublease, Index No. LT-303929-25/NY, NYSCEF Doc. No. 14).
B. Petitioner's Motion to StrikeWhile Petitioner's motions to strike were filed after Respondent's discovery motions, they will nevertheless be addressed first. Petitioner moves to strike the Respondents' following defenses and counterclaims: defenses challenging Petitioner's standing to bring these proceedings; defenses alleging failure to properly state Petitioner's interest in the premises per RPAPL 741; defenses alleging illegal deregulation or rent stabilization status; defenses and [*3]counterclaims alleging rent overcharge; defenses alleging the failure to register rents with DHCR; defenses and counterclaims for harassment; a defense alleging violation of GBL 352-eeee; and a defense taking issue with the predicate notice. The defenses relating to regulatory status will be addressed first.
1. Legal Standard
On a motion to dismiss a defense under CPLR 3211(b), the petitioner bears the "heavy burden" of demonstrating that the defenses are without merit as a matter of law (Granite State Ins. Co. v Transatlantic Reins. Co., 132 AD3d 479, 481 [1st Dept 2015]). On such a motion the respondent is entitled to the benefit of every reasonable inference, and the pleading must be liberally construed (534 E. 11th St. Hous. Dev. Fund Corp. v Hendrick, 90 AD3d 541, 542 [1st Dept 2011]). When a party submits evidentiary material in opposition to a motion under CPLR 3211, the question for the court is whether a party "has a claim, not whether he or she has stated one" (Weksler v Weksler, 81 AD3d 401, 402 [1st Dept 2011]).
2. The Regulatory Status Defenses
Each respondent asserts as a defense that Petitioner has illegally deregulated the apartments subject to these proceedings. They argue that Petitioner's claimed basis for deregulation—the building's cooperative ownership—is inapplicable insofar as the operation of the building as a rental property and the control of the cooperative by Edelstein LLC and its principal render the operation a "sham cooperative." They also assert defenses and counterclaims contingent upon their success on this first point; namely, that Petitioner has overcharged them and failed to comply with registration obligations under the Rent Stabilization Law and Code.
Petitioner acknowledges that the building was previously subject to the Rent Stabilization Law, but argues that the apartments in question are deregulated insofar as all of the Respondents moved into the premises after a valid cooperative conversion (see Rent Stabilization Law [NYC Admin Code] § 26-504 [a]; Rent Stabilization Code [9 NYCRR] § 2520.11 [l]). It notes that the operating plan was approved and the cooperative conversion declared effective by the New York State Attorney General, and argues that Respondents—as subtenants taking occupancy decades after the conversion—have no standing to challenge the cooperative status of the building (see Tenants United at 20 Magaw Place, New York, NY 10033 v Attorney Gen. of State of NY, 260 AD2d 161, 161-162 [1st Dept 1999] ["Nor do plaintiffs have standing to challenge a conversion that was completed long before any of them, with one exception, became tenants of the building."). For these reasons it moves that the defenses and counterclaims relating to Respondents' "sham cooperative" argument be stricken from their answers.
As an initial matter, there is no question that the Housing Court has jurisdiction to determine issues of rent stabilization status, even where the relevant events occurred prior to the commencement of a respondent's tenancy or beyond the base date applicable to an overcharge claim (see, e.g., Gersten v 56 7th Ave. LLC, 88 AD3d 189, 201 [1st Dept 2011] ["[E]xcept as to rent overcharge claims, the Legislature has not imposed a limitations period for determining the rent regulatory status of an apartment"]). The Housing Court may also deny a petition where the petitioner fails to satisfy its burden to prove the regulatory status it pleads (see Rapone v Katz, 30 Misc 3d 132(A) [App Term, 1st Dept 2011] [petition was properly dismissed where petitioner [*4]failed to prove entitlement to cooperative exemption from rent stabilization], leave to appeal denied sub nom. Rapone v Katz-Simpson, 2011 NY Slip Op 82467 [U] [1st Dept 2011]).
The Rent Stabilization Law provides that, with certain exceptions not applicable here, rent stabilization applies only in multiple dwellings "not owned as a cooperative or a condominium" (Rent Stabilization Law [NYC Admin Code] § 26-504 [a]). But unlike other grounds for exemption from rent stabilization, exemption on the basis of cooperative ownership is not necessarily permanent. The Court of Appeals addressed this question directly in Fed. Home Loan Mortg. Corp. v New York State Div. of Hous. and Community Renewal, (87 NY2d 325 [1995]). Noting the broad interpretation afforded to laws regulating rents in view of their remedial nature, the Court wrote:
The [Rent Stabilization Law] provides in clear terms that a building otherwise eligible for rent stabilization is exempt from such regulation if "owned as a cooperative." It follows from the terms of this exemption that as soon as a multiple dwelling is no longer owned as a cooperative, the Rent Stabilization Law and Code again automatically become applicable to it. In other words, a dissolved cooperative is not a cooperative and thus is not entitled to an exemption under the Rent Stabilization Law.
(Id. at 332-333). Concisely stated, Respondents' argument is that the subject building is no more "owned as a cooperative" now than it would be if Grenville were dissolved by the Attorney General or if Mr. Edelstein had purchased the property after foreclosure.
This argument tracks with better-developed strains of decisional law compelling courts to look beyond legal formalities to the underlying facts in determining rent stabilization status. For example, while buildings with fewer than six units are categorically exempt from rent stabilization, a certificate of occupancy reflecting fewer than six apartments does not compel exemption in the face of proof showing the de facto existence of additional units (see Pineda v Irvin, 40 Misc 3d 5, 6 [App Term, 1st Dept 2013] [certificate of occupancy limiting use to a one- or two-family dwelling did not preclude rent stabilization where actual occupancy constituted at least six units]), or demonstrating the building to be owned and operated sufficiently in common with a neighboring building (see Matter of Salvati v Eimicke, 72 NY2d 784, 792 [1988] [rent stabilization may apply in 'horizontal multiple dwellings' where "there are sufficient indicia of common facilities, common ownership, management and operation to warrant treating the housing as an integrated unit"]). While an occupant under a sublease is ordinarily unprotected by rent stabilization, proof that the prime tenancy is illusory may extend regulatory coverage to the subtenant (see Matter of Perlbinder v New York City Conciliation and Appeals Bd., 67 NY2d 697, 699 [1986] [finding agency determination to confer rent stabilization protections on subtenants of illusory prime tenants neither inconsistent with code nor unreasonable]).
Neither party offers appellate authority addressing the "sham cooperative" defense, but Respondents offer two trial-level decisions that lend support to their argument: Lee v 191 Edge Water Equity LLC, (2016 NY Slip Op 32228 [U] [Sup Ct, NY Cnty 2016]), and Baldwin v McCarry, (78 Misc 3d 1214 [A] [Civ Ct, NY Cnty 2023]). In Lee, two subtenants brought an action seeking declaratory judgment as to their alleged rights under the Rent Stabilization Law on a "sham cooperative" theory, after having already been sued by their landlord in Housing Court. The landlord moved to dismiss the Supreme Court action on the basis that the relevant claims had already been asserted as a defense by the tenants in Housing Court, and the tenants [*5]opposed the motion insofar as they were concerned that the Housing Court lacked jurisdiction to hear the defense. In dismissing the Supreme Court action, the court held:
Tenants have the right to have their claims adjudicated, and to have a court look past the fact that the rental agreement form may say "sublease" and into the substance of whether the building is a "sham" co-op, one in name only but operated as a for-profit rental building. The housing court is the most natural place to litigate this issue and the affirmative defense is already pending there.(Lee, 2016 NY Slip Op 32228 [U]).In Baldwin, the Housing Court considered a "sham cooperative" defense similar to the one raised here. Writing after the conclusion of trial, the court noted that the petitioner had introduced evidence of an approved cooperative conversion sufficient to establish its prima facie case for exemption from rent stabilization. Nevertheless, it observed that
the Cooperative operates as it would when one discrete landlord held sole title to the Building. In the forty-plus years since the putative conversion of the Building to cooperative status, the only discernible board members have been Petitioner and, for a time at least, Petitioner's Attorney. The Cooperative has never held an election for board members. Petitioner sets the maintenance on her own according to her own counsel. Aside from the sale of shares to a member of Petitioner's immediate family, a grand total of one other shareholder has purchased shares in the Cooperative. Even the member of Petitioner's immediate family has only bought shares for one other unit.
(Baldwin, 78 Misc 3d at 1214 [A]). Acknowledging that it had no authority to determine questions of title or ownership, the Baldwin court held that "Housing Court may determine whether a purported cooperative is in reality a de facto for-profit rental building, designated as a cooperative in name only to evade the strictures of rent regulation" (id.). The court ultimately concluded that in the face of substantial evidence of operations inconsistent with those of a bona fide cooperative, the petitioner had failed to prove its claimed exemption by a preponderance of the evidence (id.).
Petitioner attempts to distinguish Baldwin from these proceedings in two ways. First, it notes that in the Baldwin case, the court observed operations inconsistent with a bona fide cooperative dating all the way to the initial conversion. Here, by contrast, Petitioner notes that between the 1987 approval of the offering plan and Edelstein's takeover in 1995 neither party disputes that the cooperative was bona fide. Secondly, Petitioner notes that the Baldwin court gave some weight to the petitioner's failure in that case to discharge her good faith duty as cooperative sponsor to sell sufficient shares to result in the creation of a viable cooperative (Baldwin, 78 Misc 3d at 1214 [A]; see also 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [plaintiffs stated viable claim that sponsor had breached its good faith duty under offering plan to "to timely sell so many shares in the building as necessary to create a fully viable cooperative"]). Here, by contrast, Petitioner asserts that it is not the sponsor and is bound by no such duty.
The court finds Baldwin's analysis compelling and, accepting as true the facts as alleged by Respondents, finds no basis to distinguish this case from Baldwin. While it is true that [*6]Respondents take no issue with the first few years of cooperative operations, the cooperative exemption from rent stabilization is not a one-way ratchet such that a bona fide conversion might excuse in perpetuity de facto operations inconsistent with cooperative principles and indistinguishable from a for-profit rental property. As noted above, the cooperative exemption is not necessarily a permanent one, and once a building is no longer owned as a cooperative, it reverts to rent stabilization (Fed. Home Loan Mortg. Corp. v New York State Div. of Hous. and Community Renewal, 87 NY2d at 333; see also 9 NYCRR § 2520.11 [l] [1]). Respondents' argument that the building is no longer owned "as a cooperative" finds significant support in the moving papers. As to Petitioner's second point, that Petitioner is not the cooperative sponsor is a fact that at best cuts both ways; if Grenville and Petitioner truly have no obligation under the offering plan or Martin Act to sell sufficient shares to create a viable cooperative, the distinction between the operations of Petitioner and Grenville and those of a bona fide cooperative becomes even more stark.
Therefore, Petitioner's motion to strike Respondents' defenses sounding in illegal deregulation 
is denied. The defenses and counterclaims sounding in rent overcharge and failure to register rents survive as well, as Petitioner has not demonstrated them to be without merit as a matter of law.
3. Lack of Standing & Failure to State Petitioner's Interest in the Premises per RPAPL 741
Petitioner next moves to strike the defenses asserted by each Respondent challenging Petitioner's standing to bring the proceeding and taking issue with the petition's statement of Petitioner's interest at the premises. Petitioner claims to have standing to bring this proceeding under RPAPL 721(1) as lessor of the premises vis-à-vis the Respondents, and claims its own underlying right to possession as grounded in its proprietary lease with Grenville. Respondents apparently take issue with neither of these claims per se, but argue that the petition's statement that "Petitioner is the owner and landlord of the premises" is a material misstatement sufficient to constitute a defense.
As an initial matter, to the extent that Respondents challenge Petitioner's standing, this argument is without merit. Petitioner correctly asserts that a sublessor of a premises has standing to commence summary proceedings under RPAPL 721(1).
The remainder of Respondents' arguments on these points are based in RPAPL 741(1), which requires that a petition "[s]tate the interest of the petitioner in the premises from which removal is sought." The pleading requirements in § 741 serve to inform a respondent "of the factual and legal claims that he or she will have to meet" and enable the tenant "to interpose whatever defenses are available" (MSG Pomp Corp. v Doe, 185 AD2d 798, 800 [1st Dept 1992]). Respondents object that Petitioner's characterization of its interest as that of an "owner and landlord" is incorrect, and that this constitutes an unamendable and fatal defect.
Respondents have a point: Petitioner's interest in the premises is that of a shareholder and proprietary lessee under the cooperative, and a sublessor with respect to Respondents. And yet Petitioner's characterization is not completely untethered to the reality. It is owner of cooperative shares associated with the units, and it granted possession to Respondents in exchange for the payment of rent, as a prototypical landlord might. Under the particular circumstances of this case, including the robust articulation of Petitioner's interest included in the Respondents' [*7]subleases (see, e.g., Rodriguez Sublease, NYSCEF Doc. No. 27; Polanco Sublease, Index No. LT-302194-24/NY, NYSCEF Doc. No. 26; Henderson Sublease, Index. No. LT-308380-24/NY, NYSCEF Doc. No. 24; De Leon Sublease, Index No. LT-313894-24/NY, NYSCEF Doc. No. 17; Almendariz Sublease, Index No. LT-303929-25/NY, NYSCEF Doc. No. 14), Petitioner's inartful pleading of its relationship with the premises constitutes a nonprejudicial irregularity that is properly overlooked (see CPLR 2001; Coalition Houses L.P. v Bonano, 12 Misc 3d 146 [A] [App Term, 1st Dept 2006]; Park Properties Assoc., L.P. v Williams, 38 Misc 3d 35, 37 [App Term, 2d Dept 2012]). Therefore, Petitioner's motions to strike the standing and RPAPL 741 defenses are granted.
4. Harassment
Petitioner next moves to strike the harassment counterclaims asserted by Respondents Henderson, De Leon, and Armendariz. Under NYC Admin. Code § 27-2004(a)(48), harassment is defined to mean an act or omission by or on behalf of an owner that "causes or is intended to cause any person lawfully entitled to occupancy of a dwelling unit to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy," and which includes certain defined acts or omissions. Among these acts and omissions are:
• § 27-2004(a)(48)(a-1): knowingly providing to any person lawfully entitled to occupancy of a dwelling unit false or misleading information relating to the occupancy of such unit;• § 27-2004(a)(48)(b-2): repeated failures to correct hazardous or immediately hazardous violations of this code or major or immediately hazardous violations of the New York city construction codes, relating to the dwelling unit or the common areas of the building containing such dwelling unit, within the time required for such corrections;• § 27-2004(a)(48)(d-1): commencing a baseless or frivolous court proceeding against a person lawfully entitled to occupancy of such dwelling unit if repeated baseless or frivolous court proceedings have been commenced against other persons lawfully entitled to occupancy in the building containing such dwelling unit; and• § 27-2004(a)(48)(g): other repeated acts or omissions of such significance as to substantially interfere with or disturb the comfort, repose, peace or quiet of any person lawfully entitled to occupancy of such dwelling unit and that cause or are intended to cause such person to vacate such dwelling unit or to surrender or waive any rights in relation to such occupancy.Respondents Henderson and De Leon allege in their answers that Petitioner engaged in harassment
by engaging in acts and/or omissions that include, but are not limited to, a refusal to correct outstanding conditions and violations of the warranty of habitability at the subject premises, and, attempting to evict Respondent[s] in retaliation for having asserted [their] rights by demanding that Petitioner provide [them] with a safe and habitable place to live
(see Henderson Answer, Index. No. LT-308380-24/NY, NYSCEF Doc. No. 8, ¶ 63; De Leon [*8]Answer, Index No. LT-313894-24/NY, NYSCEF Doc. No. 7, ¶ 68). They allege that these acts "have caused, or were intended to cause, Respondent[s] to vacate the premises or surrender [their] rights to the subject premises" (see Henderson Answer at ¶ 64, De Leon Answer at ¶ 69). They also annex to their answers summary violation reports from the website of the New York City Department of Housing Preservation and Development showing hazardous open violations in each apartment and in the building's common areas.
Petitioner argues that these allegations are insufficiently specific under CPLR 3013 to constitute viable claims. However, given the generous standard afforded to Respondents on this CPLR 3211(b) motion, the court finds that Respondents Henderson and De Leon have stated sufficient claims for harassment under NYC Admin Code § 27-2004(a)(48)(b-2) and (g).
Respondent Almendariz alleges in her answer that Petitioner's acts constituting harassment include "[k]knowingly commencing this proceeding based on false or misleading statements" and commencing this "baseless and/or frivolous" proceeding while having also commenced baseless proceedings against Respondents Rodriguez, Polanco, Henderson and De Leon (see Almendariz Answer, Index. No. LT-303929-25/NY, NYSCEF Doc. No. 10, ¶ 39). She also alleges that these acts "caused and/or are intended to cause the tenants of the subject building, such as Ms. Almendariz, to vacate their dwelling units and/or to surrender and/or waive their rights in relation to their occupancy" (id. at ¶ 40).
Petitioner seeks to strike this defense on an argument similar to the one mounted in opposition to Respondents' deregulation claims, supra. Given the apparent novelty of Respondents' "sham cooperative" theory, even if she ultimately prevails on her regulatory status claims, Respondent Almendariz might face stiff headwinds in arguing that Petitioner "knowingly" misled her about regulatory status or that these eviction proceedings are "baseless or frivolous." Nevertheless, at this stage the court finds that Respondent Almendariz has articulated a harassment claim under NYC Admin Code § 27-2004(a)(48)(a-1) and (d-1) that is not without merit as a matter of law.
Therefore, Petitioner's motion to strike the harassment claims is denied.
5. GBL 352-eeee
Respondent Almendariz also asserts a defense seeking dismissal on the basis of Petitioner's failure to comply with GBL 352-eeee.[FN3]
This defense is properly stricken. While, as discussed at length, supra, Respondents have stated a viable defense on their "sham cooperative" theory of regulatory status, a tenant who assumed occupancy post-conversion has no standing under GBL 352-eeee to challenge a cooperative conversion per se (Tenants United at 20 Magaw Place, New York, NY 10033 v Attorney Gen. of State of NY, 260 AD2d 161, 161-162) [1st Dept 1999]). To the extent that this defense might be read to assert rights as a non-purchasing tenant under the Martin Act, this argument is unavailable to post-conversion tenants in the First Department (see Park W. Vil. Assoc. v Nishoika, 187 Misc 2d 243, 244 [App Term, 1st Dept 2000]). Therefore, Petitioner's motion to strike this defense is granted.
6. Defective Predicate Notice
Finally, Petitioner moves to strike Respondent Almendariz's defense alleging a defective predicate notice. This defense is properly stricken as well. A predicate notice served in anticipation of a summary eviction proceeding must be "reasonable in view of all attendant circumstances" (Hughes v Lenox Hill Hosp., 226 AD2d 4, 17 [1st Dept 1996], lv dismissed and denied, 90 NY2d 829 [1997]). Respondent takes issue with Petitioner's use of the term "monthly hiring" in the notice of termination, but the court sees no valid basis for any objection to this language. To the extent that Respondent argues that the unit's alleged regulatory status renders this no-cause termination notice improper, the substance of this defense is sufficiently preserved elsewhere in the answer to render the additional defense superfluous. Therefore, Petitioner's motion to strike this defense is granted.
C. Respondents' Motion for Leave to Conduct DiscoveryRespondents all move for leave to conduct discovery regarding their regulatory status defenses.
Discovery in a summary eviction proceeding is not permitted by right and may only proceed with leave of court pursuant to CPLR 408. Courts allow discovery where a party can demonstrate "ample need" for the information sought (see New York Univ. v. Farkas, 121 Misc 2d 643, 643 [Civ Ct, NY Cnty 1983]). In Farkas, the seminal case addressing discovery in summary eviction proceedings, the court identified a series of factors for consideration in determining whether a party has ample need for discovery, including whether there is a need to determine information related to a cause of action, whether the disclosure is likely to clarify disputed facts, whether prejudice would result from a grant of leave to conduct discovery, and whether such prejudice could be mitigated (id.). Recent cases have considered the Farkas factors alongside the general preference for efficiency in summary proceedings, evaluating whether granting discovery would serve to expedite resolution of the underlying dispute (see, e.g., Temo Realty LLC v. Herrera, 82 Misc 3d 299, 301 [Civ Ct, Kings Cnty 2023]; 50th Street HDFC v. Abdur-Rahim, 72 Misc 3d 1210 [A] [Civ Ct, Kings Cnty 2023]).
It is the tenant's burden to establish ample need for discovery on the issue of an apartment's regulatory status (see, e.g., Mautner-Glick Corp. v Higgins, 64 Misc 3d 16, 18 [App Term, 1st Dept 2019]). Here, Respondents state a viable claim for regulatory status under their "sham cooperative" theory. Insofar as this theory turns on questions of Petitioner's and Grenville's internal operations, the documents and information relevant to Respondents' claims are uniquely in the possession of Petitioner. Discovery is therefore appropriate.
Petitioner opposes Respondents' various proposed discovery demands on a variety of grounds but relies upon two arguments in particular. First, Petitioner opposes the demands on the basis that information about the cooperative's operations is not relevant here given that any claim to rent stabilization status was foreclosed by the proper cooperative conversion in 1988. As discussed above, the court disagrees and finds the Respondents to have stated a viable defense under their "sham cooperative" theory. The discovery demands generally are reasonably calculated to result in the discovery of admissible evidence relevant to this claim. Petitioner also objects that many of the documents demanded and information sought in interrogatories are not in the possession of Petitioner, but rather belong to Grenville. While a party is, of course, [*9]obligated only to produce those documents in their "possession, custody or control" (CPLR 3120 [1] [i]), courts have observed this to include documents in the "constructive possession" of a party, when such party has the right or practical ability to obtain the documents in question (Commonwealth of N. Mariana Islands v Canadian Imperial Bank of Com., 21 NY3d 55, 62—63 [2013]). As Petitioner acknowledges ownership of approximately 98.8%[FN4]
of Grenville's cooperative shares, and shares a chief executive with Grenville, there is a valid basis for Respondents to believe Petitioner could obtain the documents and information demanded. If, in fact, Petitioner lacks certain of these documents, or is unable to produce them, it may bring the discovery process to an expeditious conclusion by preparing a Jackson affidavit detailing its search and the absence or unavailability of the records in question (see Jackson v New York, 185 AD2d 768, 770 [1st Dept 1992]).
While each Respondent has interposed proposed discovery demands, it would be overly burdensome for Petitioner to respond separately to each of these—especially insofar as the demands are nearly identical between one another. Therefore, discovery is granted only to the extent that Petitioner shall respond to the demands and interrogatories at NYSCEF Doc. No. 44 under Index No. LT-302171-24/NY. The definitions therein for the terms "Subject Premises" and "Respondent" should be understood to include each of the five apartments at issue in these proceedings, and all respondents named herein. Additionally, given the size of the building and the voluminous records demanded, the time periods asserted in many of the demands are excessive. Therefore, except for document demands 1-2, the relevant time periods with respect to the document demands are limited to the period from 2014 to present. Additionally, Respondents may conduct a deposition of Ronald Edelstein, as the moving papers show him to have had an active role in the leasing and management of the subject premises.
D. ConclusionTHEREFORE, it is
ORDERED that Petitioner's motion to strike is granted solely to the extent that
• for Rodriguez (LT-302171-24/NY), the First Defense and Second Defense are stricken;• for Polanco (LT-302194-24/NY), the First Defense and Second Defense are stricken;• for Henderson (LT-308380-24/NY), the First Defense and Second Defense are stricken;• for De Leon (LT-313894-24/NY), the First Defense and Second Defense are stricken;• for Almendariz (LT-303929-25/NY), the First Defense, Fifth Defense, and Seventh Defense are stricken; andORDERED that Respondent's motion for leave to conduct discovery is granted; and
ORDERED that Petitioner shall provide responses to interrogatories and produce documents responsive to Respondent's demands (NYSCEF Doc. No. 44), as limited above, on or before March 6, 2026; and
ORDERED that concurrently with the completion of the above, Petitioner shall complete and file a Jackson affidavit addressing any documents not produced; and
ORDERED that Petitioner shall produce Ronald Edelstein for deposition on or before March 20, 2026, at a time to be agreed upon by the parties and at a place to be determined by Respondents; and
ORDERED that the parties shall comply with the provisions of 22 NYCRR 202.20-f prior to engaging in motion practice regarding any discovery dispute; and
ORDERED that the parties shall appear in Part G, Room 581, on March 30, 2026, at 9:30 a.m., for all purposes including compliance conference.
This constitutes the decision and order of the court.
Dated: January 21, 2026New York, New YorkHon. Adam R. MeyersJudge, Housing Court

Footnotes

Footnote 1:Except where otherwise stated, the NYSCEF Document Numbers referenced in this decision refer to those filed under Index No. LT-302171-24/NY.

Footnote 2:Respondents claim that Petitioner or its principal in fact controls all shares, including those for Apartment 2C that are not reflected in the proprietary lease in evidence. Without deciding this question, the court assumes the plausible allegation to be true for purposes of Petitioner's motion to strike.

Footnote 3:Respondent's papers consistently refer to GBL 352-eee, which regulates cooperative conversions in Nassau, Westchester and Rockland Counties. The court assumes that Respondent intended to refer to GBL 352-eeee, which is applicable in New York City.

Footnote 4:As discussed above, Petitioner owns shares associated with at least 83 of the 84 apartments to which shares are assigned. The 85th unit is a superintendent apartment associated with no shares.